ANTONE LENARI & another *vs.* TOWN OF KINGSTON.

Plymouth. November 4, 1964. — January 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Dump. Nuisance. Municipal Corporations,* Public dump, Nuisance. *Damages,* Nominal. *Equity Jurisdiction,* Nominal damages.

In a suit in equity against a town based on damage to the plaintiffs' bog property through alleged offensive conditions resulting from operation of a nearby dump by the defendant and through fires on the plaintiffs' property, the plaintiffs were not entitled to injunctive relief or to substantial or nominal damages, and the bill was properly dismissed, where a master found that none of the alleged offensive conditions existed when the suit was commenced or thereafter except one which did not "unreasonably interfere with the operation of the . . . bog," that fires on the plaintiffs' property originating from the dump caused no actual damage, and that a fire which did injure the plaintiffs' property did not originate from the dump.

BILL IN EQUITY filed in the Superior Court on May 5, 1959.

Following the decision of this court reported in 342 Mass. 705 and further hearing and a supplementary report by a master, the plaintiffs appealed from decrees entered by *Dewing,* J.

*Thomas F. Quinn* for the plaintiffs.

*Phillip S. Cronin,* Town Counsel, for the defendant.

KIRK, J. The same case as earlier considered by us is reported in 342 Mass. 705. Reference to that opinion will

help in understanding what is said here. After rescript, the case was recommitted to the same master for subsidiary and ultimate findings of fact on specific issues.[1] After further hearing and an incomprehensibly long delay, the master filed a supplementary report. Thereafter by interlocutory decree the master's original and supplementary reports were confirmed and the exceptions thereto overruled. The final decree dismissed the plaintiffs' bill. The plaintiffs' appeal from the interlocutory and final decrees brings the case to us again.

The plaintiffs argue, on the one hand, that there are contradictions and inconsistencies between the original and supplementary reports of the master. On the other hand, they contend that, based on the findings in the confirmed reports, they are entitled to affirmative relief. We take a different view. The ostensible discrepancies in the recitals made in the two reports could readily have been avoided and our task, in consequence, greatly simplified if, at the hearing on the motion to confirm the supplementary report, an order had been entered requiring the master to consolidate his findings in a single substitute report. We think, nevertheless, that the supplementary report, fairly read in the light of our earlier opinion, the master's original report, and the terms of the later decree of recommittal, complies with the directions which were given to the master, and provides a basis for the entry of a final decree without resort to a further recommittal. In the entire context of the two reports we think that on points where they do not coincide, the supplemental report should be considered as superseding the original report.

The findings in the supplementary report as to the offensive conditions allegedly existing at the time the plaintiffs'

[1] The master was directed to make "additional findings as follows: 1. Whether the offensive conditions resulting from the establishment and maintenance of the dump continued to exist at the time the bill in equity was brought; 2. The means, if any, that the . . . [defendant] used to abate the conditions resulting from the establishment and maintenance of the dump; 3. The subsidiary findings as to the cause or causes of the fires on the . . . [plaintiffs'] property, particularly the fire of March 26, 1959; 4. The ultimate finding as to the cause or causes of the fires."

Lenari *v.* Kingston.

bill was filed are set out in the footnote.[2]   The report enumerates the measures taken[3] by the town to abate the conditions resulting from the operation of the dump and concludes that the town "took all reasonable means to prevent an interference with the operation of the . . . bog by any conditions that might have resulted from the operation of the . . . dump." The master found that there was no causal connection between the operation of the dump and the fire on March 26, 1959, which burned the plaintiffs' building and its contents.[4] He further found that other fires which had occurred during the years 1957, 1958 and 1959 had originated at the dump, had spread to the upland parts of the plaintiffs' property consisting of scrub pine

---

[2] "1. The disposal of sewage began in the spring of 1958 and was discontinued shortly thereafter and did not continue to exist at the time the bill in equity was brought. 2. The rats began to come on the . . . [plaintiffs'] bog approximately six months after the establishment of a town dump by the . . . [defendant] and their presence continued to exist at the time the bill in equity was brought. 3. Wild dogs came on the . . . [plaintiffs'] property subsequent to the operation of the town dump by the . . . [defendant] but this condition did not continue to exist at the time the bill in equity was brought. 4. The extensive smoke at the area of the . . . [plaintiffs'] bog, which had previously existed, did not continue to exist at the time the bill in equity was brought. 5. Burning of certain portions of the . . . [plaintiffs'] woodlands had been abated and did not continue to exist at the time the bill in equity was brought. 6. . . . 7. I find that since 1951 the . . . [plaintiffs] have had no difficulties concerning odor, dust, flies, or vermin with the exception of sea gulls, if such they be. 8. I find that the quantity of or increase in the rats and sea gulls on the . . . [plaintiffs'] property were not such as to unreasonably interfere with the operation of the . . . [plaintiffs'] bog at the time this bill in equity was brought."

[3] "9. The . . . [defendant] has used the following means to abate the conditions resulting from the establishment and maintenance of the dump: a. Sprayed rat poison four times a year at the dump for the purpose of rat control. b. Deposited sand on the active area of the dump frequently to control loose articles. c. Enforcement of a regulation prohibiting shooting in the area. d. Enforcement of a regulation prohibiting the dumping of garbage and dead animals at the dump. e. Controlled burning at the dump with the permission of the Fire Department. f. Frequent and constant check by the Fire Department of the Town of Kingston. g. Enforcement of a regulation prohibiting the dumping of sewage. h. Reasonable supervision of the area by a custodian seven days a week. i. Periodic checks of the dump by the police department and the Commonwealth of Massachusetts."

[4] The report contains the further specific finding that "the fire which occurred on the . . . [plaintiffs'] property on March 26, 1959, started inside the . . . building from cause or causes unknown and spread to the bog and that evidence introduced at the original and subsequent hearing does not support . . . a finding that this fire resulted from or was caused by the operation of the . . . dump by the . . . [t]own."

and small growth but had caused no actual damage to the plaintiffs' property.

On these findings the plaintiffs are not entitled to an injunction. It is to be noted that the gravamen of the plaintiffs' case is injury to their property. They do not argue and no evidence appears to have been offered to support any contention that the operation of the dump threatened the health or comfort of any person. See *Strachan* v. *Beacon Oil Co.* 251 Mass. 479. The passing reference in one of the ten paragraphs of the bill that the operation of the dump constituted a "menace to the safety of the . . . [plaintiffs] and their property" adds no substance to their claim to injunctive relief. Our earlier opinion, citing *Turner* v. *Oxford,* 338 Mass. 286, 289, recognized that a town may be enjoined from making use of land owned or controlled by it in a way which is offensive to persons of ordinary sensibilities occupying neighboring property, or which unreasonably diminishes the value of property owned by others. *Swensen* v. *Marino,* 306 Mass. 582, 587. *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491, 502. It is on the latter premise that the plaintiffs rest their case. Based on that premise they cannot, on this record, prevail. Despite the second hearing there is nothing in the record to show that, at the time the bill was brought or since, conditions have existed which entitle them to an injunction. Of the several conditions complained of, only one, the increase in the number of rats and sea gulls, is found to have existed at the time the bill was brought and as to this the master has found that it was "not such as to unreasonably interfere with the operation of the . . . [plaintiffs'] bog at the time this bill in equity was brought." It may be observed that no attempt has been made by the plaintiffs to show that in this respect the conclusion of the master is wrong. Nor did they by a motion to amend, recommit or otherwise, seek an opportunity to show that, since the filing of the bill, the condition has changed for the worse.

The plaintiffs are not entitled to damages. The findings of the master, tersely stated, are that, as to the fires on the

plaintiffs' property which had their origin at the dump, no actual damage was sustained by the plaintiffs; and that, as to the fire on the plaintiffs' property which did cause damage, its place of origin was the plaintiffs' property and it was not caused by the operation of the dump. The statement in the original report that there was nominal damage from the three earlier fires does not help the plaintiffs. "Equity pays no attention to nominal damages." *Fred T. Ley & Co. Inc.* v. *Sagalyn,* 302 Mass. 488, 495. *Eno* v. *Prime Mfg. Co.* 314 Mass. 686, 702.

It is unnecessary to consider the grounds of nonliability of the town alluded to by Lummus, J., in *Gosselin* v. *Northbridge,* 296 Mass. 351, 353, and cases cited. See *Turner* v. *Oxford,* 338 Mass. 286, 289.

"The plaintiffs must stand on the case presented by their pleadings and evidence, and upon the findings made on the issues raised. . . . [They have failed] to show error in the decree dismissing the bill." *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 11.

The interlocutory and final decrees are affirmed.

*So ordered.*