M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

and with the determination, if any, by the Land Court on the validity of the assignments.

*So ordered.*

M. H. GORDON & SON, INC., & another[1] *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION & another.[2]

Middlesex.    January 7, 1976. — December 28, 1976.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Alcoholic Beverages Control Commission.    Alcoholic Liquors,* Importa-
    tion, Price.    *Statute,* Construction.    *Constitutional Law,* Delegation
    of powers, Alcoholic liquors.    *Words,* "Price."

A Massachusetts wholesaler of alcoholic beverages was not prohibited
    by the provisions of G. L. c. 138, §§ 25B and 25D, from importing
    such beverages from a holder of a certificate of compliance issued
    pursuant to § 18B, even though the certificate holder was not eligible
    to file and had not filed price schedules or affirmations for the brands
    being imported.  [586-590]
Where a holder of a certificate of compliance under G. L. c. 138, § 18B,
    sold alcoholic beverages to a Massachusetts wholesaler for the price
    filed and affirmed in Massachusetts pursuant to c. 138, §§ 25B and
    25D, plus an additional service charge, the service charge consti-
    tuted part of the price and therefore violated § 25B (*d*).  [590-592]
The provisions of G. L. c. 138, §§ 25B and 25D, do not constitute an
    unconstitutional delegation of legislative powers to private parties.
    [592-595]

CIVIL ACTION commenced in the Superior Court on Feb-
ruary 5, 1975.

The case was heard by *Brogna, J.*

*Evan T. Lawson* for the plaintiffs.

*Michael Eby,* Assistant Attorney General, for Alcoholic
Beverages Control Commission.

_____

[1] Major Brands Delaware, Ltd.

[2] Jack Daniel Distillery, intervener.

QUIRICO, J.  This is an action under G. L. c. 30A, for judicial review of a decision of the Alcoholic Beverages Control Commission (commission), prohibiting Major Brands Delaware, Ltd. (Major Brands), from selling or supplying to M. H. Gordon & Son, Inc. (Gordon), any alcoholic beverages for which Major Brands is neither the brand owner nor the designated agent for sale thereof in the Commonwealth. The case is before this court on the plaintiffs' appeal from a judgment entered in the Superior Court affirming the decision of the commission. The court also enjoined Gordon, pending this appeal, from selling or supplying to retailers in this Commonwealth any alcoholic beverages obtained from any holder of a certificate of compliance under G. L. c. 138, § 18B, but who is not the brand owner or designated agent therefor within the meaning of G. L. c. 138, §§ 25B-25D.

We summarize the pertinent facts about which there is no disagreement. Major Brands is a Delaware corporation which supplies various brands of liquor to customers from its primary business location in Oklahoma. It holds a certificate of compliance issued by the commission under G. L. c. 138, § 18B. Gordon is a Massachusetts wholesaler and importer of alcoholic beverages, licensed under G. L. c. 138, § 18, which permits it to import alcoholic beverages from holders of certificates of compliance issued under G. L. c. 138, § 18B, and to sell such alcoholic beverages to licensed Massachusetts retailers.

For some time Gordon has attempted unsuccessfully to obtain certain popular brand name alcoholic beverages known as "best sellers" from the brand owners of the beverages, from their designated agents, or from a limited number of Massachusetts wholesalers who, as favored distributors, are provided with a continued supply of certain best selling brands to the exclusion of other wholesalers. In order to obtain several of these "best sellers" for distribution to Massachusetts retailers, Gordon and Major Brands entered into the following agreement. Major Brands procures name brand alcoholic beverages desired by Gordon from sources unavailable to Gordon, such as other non-

Massachusetts wholesalers, and arranges for the products to be shipped for an amount computed to include (a) the price filed and affirmed in Massachusetts pursuant to G. L. c. 138, §§ 25B and 25D, by the brand owner of the alcoholic beverage, its designated agent or a commission approved wholesaler,[3] and (b) an additional service charge therefor at an agreed percentage of the amount due for the product shipped.

1. Importation of alcoholic beverages by Massachusetts wholesalers is regulated by several sections of c. 138 of the General Laws. Section 18, as amended through St. 1973, c. 520, authorizes wholesalers "to import alcoholic beverages into the commonwealth from holders of certificates issued under section eighteen B whose licensed premises are located in other states and foreign countries . . . ." Section 18B permits the commission to issue certificates of compliance to persons having a place of business and a license granted outside the Commonwealth and whose out-of-State license permits that person to sell alcoholic beverages to licensees in Massachusetts.[4] Section 25B (*a*) and (*b*) proscribes the sale of any brand of alcoholic beverage to a Massachusetts wholesaler unless a written, duly verified schedule of bottle and case prices to wholesalers for that brand has been filed with the commission. Section 25B (*c*), as appearing in St. 1970, c. 140, § 2, directs that the schedule of prices "shall be filed by (1) the owner of such brand, or (2) a wholesaler . . . who is designated as agent for the purpose of filing such schedule [if the brand owner] is not licensed by the commission, or (3) with the

---

[3] In its decision, the commission noted that valid price schedules and verified affirmations of the prices posted for the alcoholic beverages sold to Gordon by Major Brands were filed by brand owners or their designated agents in accordance with G. L. c. 138, §§ 25B and 25D.

[4] Section 18B, as amended through St. 1974, c. 279, § 1, includes the proviso that "such certificate shall be issued upon the condition that the holder shall furnish from time to time as the commission may require . . . information concerning all shipments or sales of alcoholic beverages made by him to licensees in this commonwealth, and that he comply with the provisions of this chapter and any rules or regulations made under authority contained therein."

approval of the commission, by a wholesaler, in the event that the owner of the brand is unable to file a schedule or designate an agent for such purpose." Furthermore, § 25B (*d*) explicitly prohibits the sale of any brand of alcoholic beverage to a Massachusetts wholesaler at any price except the price then in effect unless written permission is obtained from the commission for good cause shown.

General Laws c. 138, § 25D, which was originally inserted by St. 1966, c. 706, after a message by the Governor stating reasons for further regulation of the pricing of alcoholic beverages brought into the Commonwealth for resale,[5] complements § 25B. Section 25D requires that the schedule of prices filed pursuant to § 25B be accompanied by an affirmation, duly verified by the brand owner or its designated agent, stating that the price set forth in the schedule is no higher than the lowest price at which the beverage is to be sold during the calendar month covered by the schedule to any wholesaler anywhere in the country or to any State or State agency which owns and operates retail liquor stores.

In its decision in the present case, the commission concluded that these regulatory provisions created a bar to the importation of alcoholic beverages by Massachusetts wholesalers from anyone but persons, who, in accordance with G. L. c. 138, §§ 25B and 25D, are authorized to file price schedules and affirmations pertaining to each posted price. The commission contends that its interpretation of the statutes implements the expressed legislative purpose of promoting orderly importation of alcoholic beverages and assuring that Massachusetts consumers do not pay prices which are inflated by discriminatory interstate pricing schemes. The plaintiffs disagree with the commission's interpretation. They contend that the regulatory scheme established by c. 138 does not prohibit Massachusetts wholesalers from importing alcoholic beverages from holders of certificates of compliance under G. L. c. 138, § 18B, where the certificate holder has not filed price schedules or

---

[5] 1966 House Doc. No. 3911.

588                                    371 Mass. 584

M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

affirmations for the brands of alcoholic beverages being imported.

Section 25B (*a*) proscribes importation of alcoholic beverages unless price schedules have been filed by persons qualified to do so by § 25B (*c*). Section 25D (*a*) requires that a properly verified affirmation be filed with and deemed part of the price schedule. Neither section, however, contains any language which even implicitly forbids the importation of alcoholic beverages from § 18B certificate holders who are not correspondingly authorized to file price schedules and affirmations pursuant to §§ 25B and 25D. Furthermore, § 18, while identifying § 18B certificate holders as a proper source from which Massachusetts wholesalers may obtain alcoholic beverages, does not require wholesalers to purchase alcoholic beverages solely from certificate holders who are authorized by §§ 25B and 25D to file price schedules and price affirmations. As long as Massachusetts wholesalers import alcoholic beverages, for which filed price schedules and affirmations are in effect, from § 18B certificate holders at the scheduled price, there are no provisions in the regulatory scheme created by c. 138 to prevent wholesalers from purchasing from a § 18B certificate holder who is not eligible to file price schedules or affirmations for the brands of alcoholic beverages involved.[6]

The commission argues that prohibiting importation of alcoholic beverages from § 18B certificate holders who are not eligible to file price schedules and affirmations will insure an efficient and manageable system of bringing alcoholic beverages into Massachusetts. Although we give due consideration to the commission's expertise in adminis-

---

[6] The commission contends that the Legislature never envisioned the importation of alcoholic beverages from any source other than persons who are authorized to file price schedules and affirmations in accordance with §§ 25B and 25D. We note, however, that a bill, proposed in the House of Representatives, which would have amended § 18 to require Massachusetts wholesalers to purchase alcoholic beverages solely from brand owners or their designated agents, was rejected by the House following an unfavorable committee report. 1976 House Doc. No. 1197.

371 Mass. 584                                                          589

M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

tering the regulatory provisions of c. 138, the ultimate responsibility for interpreting the applicable statutes rests with this court. In discharging this responsibility the court must interpret the statutes as enacted by the Legislature and in a manner which will recognize the Legislature's policy decisions. "[O]missions cannot be supplied and . . . excrescences cannot be cut out by the judicial department of government. The court can only interpret according to the common and approved usages of the language the words used, without enlargement or restriction and without regard to its own conceptions of expediency." *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929). See *Spellman* v. *Metropolitan Transit Authority*, 328 Mass. 446, 450 (1952); *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 321 Mass. 90, 97 (1947); *West's Case*, 313 Mass. 146, 149 (1943); *Brennan* v. *Election Comm'rs of Boston*, 310 Mass. 784, 789 (1942); *Gallagher* v. *Wheeler*, 292 Mass. 547, 556 (1935). Cf. *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 348 (1964). The plain language of c. 138 was drawn with care. If §§ 25B and 25D were interpreted in the manner urged by the commission, they would in effect be enlarged to include something which the Legislature, either by inadvertence or design, omitted therefrom. Courts and administrative tribunals must diligently respect the policy limits set by the Legislature in enacting a particular statute. *United States* v. *Sisson*, 399 U.S. 267, 298-299 (1970). *62 Cases of Jam* v. *United States*, 340 U.S. 593, 600-601 (1951). *Iselin* v. *United States*, 270 U.S. 245, 250-251 (1926).

General Laws c. 138, § 2, in conjunction with G. L. c. 6, § 44, delegates to the commission authority to promulgate regulations pertaining to the conduct of the alcoholic beverages industry. Additionally, G. L. c. 138, § 25D (*h*), specifically empowers the commission to make appropriate rules to prevent price discrimination by suppliers of alcoholic beverages.[7] The commission does not appear to have

---

[7] General Laws c. 138, § 25D, was patterned after §§ 7 and 8 of c. 531, 1964 Session Laws of New York, which mandates the filing of price

promulgated any rule which purports to limit the sources from which Massachusetts wholesalers may import alcoholic beverages, assuming it is empowered to do so by rule. See *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 538 (1976); *Universal Mach. Co.* v. *Alcoholic Beverages Control Comm'n,* 301 Mass. 40, 43-44 (1938).

For these various reasons, the commission's decision on this issue was incorrect.

2. The plaintiffs contend that the fee charged by Major Brands for the service of providing Gordon with brand name alcoholic beverages did not contravene G. L. c. 138, §§ 25B and 25D. General Laws c. 138, §§ 25B and 25D, explicitly forbids the sale of alcoholic beverages to Massachusetts wholesalers except at the filed and properly affirmed price then in effect, unless the commission grants written approval for sales at a different price. The commission found that the sales of alcoholic beverages to Gordon by Major Brands were not made at the scheduled and affirmed price. It concluded that, because of Gordon's obligation under the agreement with Major Brands to pay the service charge in addition to the "affirmed price" for each shipment of alcoholic beverages, Major Brands was selling alcoholic beverages to Gordon at a price higher than the "affirmed price." The plaintiffs acknowledge that alcoholic beverages may be sold to Massachusetts wholesalers only

schedules and affirmations for all imported alcoholic beverages (see 1966 House Doc. No. 3911, appendix A). As in Massachusetts, the price schedules and affirmations must be filed by brand owners, or their designated agents. The law, however, does not require New York wholesalers to import alcoholic beverages exclusively from persons who are authorized by the law to file price schedules and affirmations. But pursuant to its power to draft regulations pertaining to the supervision of the liquor trade in New York, the State Liquor Authority promulgated a rule which permits brand owners or their agents to limit the distribution of their brand of liquor to specified New York wholesalers. The brand owner or agent must submit a list of approved wholesalers to the State Liquor Authority at the same time that the price schedules and affirmations are filed. No wholesaler whose name does not appear on the list is permitted to buy or sell the specific brand of liquor manufactured or distributed by the brand owner or agent thereof who has submitted the list. N.Y. Alcoholic Beverage Control Law app. § 65.8 (McKinney 1970).

at the affirmed price, but they argue that the service charge imposed by Major Brands is not part of the price of the goods. They maintain that, like shipping costs, the service charge increases the "laid-in-cost" of the alcoholic beverages but does not alter the price at which the beverages are obtained from the vendor. We disagree.

We have often observed that "when a statute is construed its words are to be given their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature." *Prudential Ins. Co. of America* v. *Boston,* 369 Mass. 542, 546 (1976). *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 238 (1960). *A. Belanger & Sons* v. *Joseph M. Concannon Corp.,* 333 Mass. 22, 25 (1955).

"Price" means the actual amount paid to the supplier for goods furnished to the buyer. *Kapiolani Motors, Ltd.* v. *General Motors Corp.,* 337 F. Supp. 102, 104 (D. Hawaii 1972). In determining the lowest price for which an alcoholic beverage is sold in other States, G. L. c. 138, § 25D (*d*), requires that appropriate reductions be made to reflect all discounts, rebates, and other allowances given to the purchasers. When computed, the resulting figure is the actual amount paid to a supplier for the alcoholic beverages furnished to a Massachusetts wholesaler. Correspondingly, when a fee is exacted by a supplier for services rendered in obtaining a product not otherwise available to the purchaser, the actual amount paid to the supplier by the purchaser for the privilege of acquiring the goods is increased. That enlarged amount is the price paid for the goods furnished by the supplier. See *Guyott Co.* v. *Texaco, Inc.,* 261 F. Supp. 942, 948 (D. Conn. 1966); *Bowles* v. *Stapleton,* 53 F. Supp. 336, 340 (D. Colo. 1943); *Burton* v. *Rogers,* 492 S.W.2d 695, 700-701 (Tex. Civ. App.), rev'd on other grounds, 504 S.W.2d 404 (Tex. 1973).

In construing a Federal statute which levied a tax on soft drink manufacturers of ten per cent of the price at which the beverages were sold, the United States Supreme Court defined the term "price" as "the total sum paid for the goods." The Court further noted that "[t]he amount

592                                                    371 Mass. 584

M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price . . . ." *Lash's Prods. Co.* v. *United States,* 278 U.S. 175, 176 (1929). Similarly in the present case, the amount added by Major Brands as a service charge was paid by Gordon simply for the privilege of receiving the alcoholic beverages and for no other reason. The service charge imposed by Major Brands in connection with its sales to Gordon was part of the price at which the beverages were sold to Gordon, with the result that the price was higher than the filed and affirmed price. The sales therefore violated the unambiguous language of G. L. c. 138, § 25B (*d*).

The plaintiffs argue, in the alternative, that even if the sales of alcoholic beverages pursuant to their agreement were consummated at prices in excess of the filed and affirmed price, the commission should have approved the transactions under its authority set forth in G. L. c. 138, § 25B (*d*), as appearing in St. 1970, c. 140, § 2, to grant written permission for sales at other than the posted price "for good cause shown and for reasons not inconsistent with the purpose of this chapter." The commission was asked to grant such permission and it declined to do so. Although the commission, in the exercise of its discretion, could have granted permission, there is nothing in the record which persuades us that the commission was legally required to grant it, or that its refusal to do so was unlawful.

3. The plaintiffs question the statutory scheme for regulating the prices at which alcoholic beverages are imported by Massachusetts wholesalers. They contend that the Legislature has unconstitutionally attempted to vest in private persons the authority to fix such prices. We do not agree.

Section 2 of the Twenty-first Amendment to the United States Constitution provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The United States Supreme Court has consistently

held that this amendment "bestowed upon the states broad regulatory power over the liquor traffic within their territories." *Joseph E. Seagram & Sons* v. *Hostetter*, 384 U.S. 35, 42 (1966), quoting from *United States* v. *Frankfort Distilleries, Inc.*, 324 U.S. 293, 299 (1945). This court has similarly observed that "[t]he powers of the States in dealing with the regulation of the sale of intoxicating liquors are very broad. What they may wholly prohibit, they may permit only on terms and conditions prescribed by the Legislature." *Connolly* v. *Alcoholic Beverages Control Comm'n*, 334 Mass. 613, 619 (1956). *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n*, 334 Mass. 59, 61 (1956).

The comprehensive statutory program for the regulation of the alcoholic beverages industry in Massachusetts includes provisions for the control of pricing of alcoholic beverages in the wholesale sector. For thirty years, G. L. c. 138, § 25B, has required that price schedules be filed for each brand of alcoholic beverage sold to a Massachusetts wholesaler. Section 25D merely complements this long-standing filing requirement by directing that the price schedule, when filed, be accompanied by a statement affirming that the scheduled price is no higher than the lowest price at which the product is sold outside the Commonwealth. This indicates a legislative intent to assure to the Massachusetts alcoholic beverages industry and its patrons the benefit of the lowest prices made available to bulk purchasers in other States.

The authority of the Commonwealth to protect its citizens by the exercise of its police power "is commensurate with the nature of the evil which it seeks to eliminate." *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n, supra* at 62. Whether supervising the setting of maximum prices which may be charged by wholesale suppliers of alcoholic beverages is a proper exercise of the police power turns on whether the legislative plan "bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Neces-*

*saries of Life,* 307 Mass. 408, 418 (1940). *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422 (1965). "All rational presumptions are made in favor of the validity of every legislative enactment. Enforcement is to be refused only when it is in manifest excess of legislative power." *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379 (1950). *Mobil Oil Corp.* v. *Attorney Gen.,* 361 Mass. 401, 412-413 (1972). *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health, supra.*

The plaintiffs' constitutional challenge is aimed at the authority given by §§ 25B and 25D to brand owners or their designated agents to file schedules and affirmations with the commission and by so doing to establish the price at which they intend to sell those brands of alcoholic beverages to Massachusetts wholesalers. Relying on our decision in *Corning Glass Works* v. *Ann & Hope, Inc. of Danvers,* 363 Mass. 409 (1973), the plaintiffs assert that this is an unconstitutional delegation of legislative powers to private parties. But the circumstances in the *Corning Glass* case and those in the present case are markedly different. The Fair Trade Law, G. L. c. 93, §§ 14A-14D, at issue in the *Corning Glass* case, does not provide a comprehensive plan for regulating prices at which all brands of a specific commodity could be sold. The Fair Trade Law rather provides a framework which permits manufacturers to enter into resale price maintenance contracts with certain retailers; these prices become enforceable against noncontracting retailers with knowledge. A manufacturer can take advantage of the Fair Trade Law's provisions at his option. As we pointed out in the *Corning Glass* decision, the nonsigner provision of the statute, G. L. c. 93, § 14B, unconstitutionally delegated governmental powers to private parties because "[t]here [was] no provision for participation by any public board or officer in the process by which ... [a manufacturer fixed] the prices at which ... [the retailer could] sell its merchandise, nor for any policy or standard to govern the prices set by ... [the manufacturer], nor for notice, hearing or judicial review of the prices fixed by the manufacturer." 363 Mass. at 423.

371 Mass. 584 595

M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

The challenged provisions of G. L. c. 138, however, do not suffer from that deficiency. The commission is the governmental body with which the price schedules and affirmations must be filed. The commission, pursuant to § 25B, has the authority, inter alia, (1) to halt the sale of alcoholic beverages to wholesalers if the price is not commensurate with that stipulated by the filed schedule and affirmation, or (2) to permit, for good cause shown, the importation of particular brands of alcoholic beverages at a price different from that which is in effect. The commission is thus the final arbiter of the price at which alcoholic beverages are sold by suppliers to Massachusetts wholesalers. In choosing a plan for regulating the alcoholic beverage industry, the Legislature may constitutionally insist that prices to domestic wholesalers be as low as prices offered elsewhere in the country. *Joseph E. Seagram & Sons* v. *Hostetter,* 384 U.S. 35, 43 (1966).

Although neither § 25B nor § 25D specifically provides for notice and a hearing pertaining to prices set by brand owners or their designated agents, § 25B (*d*) does provide wholesalers, such as the plaintiffs, and other parties with the opportunity to challenge a scheduled price by requesting permission from the commission to engage in transactions at a price other than that which has been filed and affirmed. There is no merit to the plaintiffs' argument that comprehensive regulation of the price of alcoholic beverages to wholesalers is unconstitutional for failure to mandate a hearing each time someone seeks approval of a sale at other than the affirmed price.

Paragraphs 1 and 2 of the judgment entered in the Superior Court are reversed and the following paragraphs are to be substituted therefor: "1. Major Brands Delaware, Ltd., is enjoined and restrained from selling, transferring, or in any way supplying alcoholic beverages to M. H. Gordon & Son, Inc., or to any other Massachusetts alcoholic beverages wholesaler licensed pursuant to G. L. c. 138, § 18, at a price which fails to correspond exactly with the affirmed price then in effect under G. L. c. 138, §§ 25B and 25D.

"2. M. H. Gordon & Sons, Inc., is enjoined and restrained from selling, transferring or in any way supplying to any Massachusetts licensed alcoholic beverages retailer alcoholic beverages which it acquired at a price which fails to correspond exactly with the affirmed price then in effect under G. L. c. 138, §§ 25B and 25D."

Paragraph "3" of the judgment shall remain as originally entered.

*So ordered.*