## M. H. Gordon & Son, Inc. & others[1] *vs.* Alcoholic Beverages Control Commission.

Middlesex.  February 5, 1982. — April 30, 1982.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & O'Connor, JJ.

*Practice, Civil*, Appeal.  *Alcoholic Liquors*, Price.  *Alcoholic Beverages Control Commission.  Administrative Law*, Judicial review.  *Res Judicata.  Sherman Antitrust Act.*

The issue whether the plaintiffs had violated provisions of G. L. c. 138, §§ 25B and 25D, had been raised at the trial of an action for judicial review of an order of the Alcoholic Beverages Control Commission, had been ruled upon by the judge, and, consequently, was properly before this court on appeal.  [67-68]

The statutory exemption for delivery costs contained in G. L. c. 138, § 25D(*d*), was inapplicable to a supplier of alcoholic beverages which sold products to a Massachusetts wholesaler at a price exceeding the "affirmed price" in effect pursuant to G. L. c. 138, §§ 25B and 25D. [68]

Failure of parties to raise before the Alcoholic Beverages Control Commission their claim that G. L. c. 138, §§ 25B and 25D, were preempted by Federal antitrust statutes did not preclude them from raising the claim in an action for judicial review of the commission's order, where the commission, in a previous adjudication, had indicated that it would abstain from deciding the claim and where new interpretations of law might have materially altered its decision. [68-69]

The doctrine of res judicata did not bar a party who was not a litigant in a prior proceeding from raising a claim that provisions of G. L. c. 138, §§ 25B and 25D, regulating the prices charged for alcoholic beverages to Massachusetts wholesalers, were preempted by Federal antitrust statutes. [69-70]

The policy of preventing price discrimination in the sale of alcoholic beverages to Massachusetts wholesalers, as set out in G. L. c. 138, §§ 25B and 25D, is clearly articulated, affirmatively expressed, and actively supervised by the Commonwealth itself and thus is not preempted by provisions of Federal law set out in the Sherman Antitrust Act, 15 · U.S.C. § 1 et seq. (1976). [70-73]

[1] Franklin and Robert Naifeh.

CIVIL ACTION commenced in the Superior Court Department on February 7, 1979.

The case was heard by *Steadman, J.,* on a motion for summary judgment.

After review was sought in the Appeals Court the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Michael Reilly* for the plaintiffs.

*Gerald J. Caruso,* Assistant Attorney General, for the defendant.

NOLAN, J.  This is an appeal from a Superior Court summary judgment for the Alcoholic Beverages Control Commission (commission) affirming a decision of the commission. Pursuant to its decision, the commission had ordered Franklin and Robert Naifeh (doing business as Central Liquor Company, hereinafter Central) to cease and desist from selling to M. H. Gordon & Son, Inc. (Gordon), or to any other Massachusetts wholesaler, "alcoholic beverages the price of which fails to correspond exactly with the affirmed prices in effect under [G. L. c. 138, §§ 25B and 25D]."[2] The commission had reached its decision after a hearing held on November 2, 1978, at which it found that Central had sold alcoholic beverages to Gordon at prices which did not conform exactly to the affirmed prices of those products. Gordon then sold these products to retail outlets in Massachusetts.

The plaintiffs commenced an action in the Superior Court for judicial review of the commission's order, pursuant to G. L. c. 30A, § 14.  A Superior Court judge denied

---

[2] An extensive discussion of §§ 25B and 25D may be found in *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n,* 371 Mass. 584, 586-590 (1976).  Briefly, a schedule of prices of alcoholic beverages sold to wholesalers in the Commonwealth must be filed with the commission. G. L. c. 138, § 25B.  This schedule must be accompanied by an affirmation stating that the prices set forth in the schedule are no higher than those charged to wholesalers anywhere else in the country. G. L. c. 138, § 25D.  The prices in the schedule are thus the affirmed prices.  These affirmed prices must be adhered to by buyers and sellers of alcoholic beverages at wholesale.

the plaintiffs' application for a preliminary injunction stay-ing enforcement of the commission's decision and also de-nied a motion to remand the action to the commission for the taking of additional evidence. The plaintiffs moved for summary judgment. This motion was denied and summary judgment was entered for the commission. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The plaintiffs appealed, and we transferred the case to this court on our own motion.

The pertinent facts are as follows. Gordon does not buy alcoholic beverages directly from Joseph E. Seagram & Sons, Inc. (Seagram), in Indiana. Gordon instead chose to buy Seagram's products from Central, which is located in Oklahoma. Central buys the Seagram's products from a Seagram's distribution center in Oklahoma and then ships them to Gordon. The commission found that the price charged by Central to Gordon was the sum of (1) the Massa-chusetts affirmed price; and (2) a service, handling, and shipping charge incurred by the manufacturer of the alco-holic beverage (Seagram) in shipping its products from its distillery in Indiana to Oklahoma, and in handling the products once there.[3] This price is greater than the price charged by Seagram for identical products sold directly to Massachusetts wholesalers at the affirmed price.

The plaintiffs advance three arguments in their appeal: (1) that the difference between the Massachusetts affirmed price and that paid by Gordon to Central was merely a legi-timate "laid-in cost" and not part of the price and that, therefore, there was no violation of §§ 25B and 25D; (2) that §§ 25B and 25D, as written and as applied, are in conflict with the Sherman Act, 15 U.S.C. § 1 et seq. (1976), and are thus unconstitutional;[4] and (3) that §§ 25B and 25D,

---

[3] This is the same price Central paid to Seagram. Central's profits resulted from charges for shipping the products from Oklahoma to Massachusetts and from interest gained on cash flow.

[4] While the plaintiffs do not state the basis for their constitutional argu-ment, we assume that they construe the purported conflict between the Commonwealth's statute and the Sherman Act as a violation of the su-premacy clause of the United States Constitution, art. 6.

386 Mass. 64                                             67

M. H. Gordon & Son, Inc. *v.* Alcoholic Beverages Control Commission.

as applied, create a burden on interstate commerce and unconstitutionally conflict with the commerce clause of the United States Constitution, art. 1, § 8. We find no merit in the plaintiffs' first two contentions, and we do not reach the third because it is argued for the first time on appeal. See *Trimmer, petitioner,* 375 Mass. 588, 592 (1978). Therefore, we affirm the judgment.

The commission has raised several threshold issues which must be addressed before we can reach the substance of this case. We shall address such issues in the context of our discussions of each argument presented by the plaintiffs.

1. *Violation of G. L. c. 138, §§ 25B & 25D.* The commission argues, initially, that the plaintiffs waived their claim that they did not violate §§ 25B and 25D.

In his memorandum of decision, the trial judge stated that the "plaintiff does not argue in his brief that there was not a violation of General Laws Chapter 138, Sections 25B and 25D, but more appropriately bases his motion for summary judgment on the unconstitutionality of the affirmative law." The general rule is that an issue not raised in the trial court cannot be argued for the first time on appeal. See, e.g., *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977); *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin.,* 369 Mass. 562, 565 (1976); *Milton* v. *Civil Serv. Comm'n,* 365 Mass. 368, 379 (1974). The judge's statement, standing alone, is not enough, however, to invoke the rule. There is extensive evidence that the issue of the violation of the statute was raised below. We point to (1) the complaint, which alleged that the decision of the commission was unsupported by substantial evidence; (2) the judge's list of issues in his memorandum of decision wherein the first issue is whether "the plaintiffs have violated General Laws Chapter 138, Section 25B and Section 25D"; and (3) the judge's conclusion, based upon a review of the evidence before the commission, that the plaintiffs did, in fact, violate §§ 25B and 25D.

The record persuades us that the issue whether the plaintiffs violated the statute has not been raised for the first time

on appeal, and was, in fact, ruled upon by the Superior Court judge and that the plaintiffs have a right to argue this issue on appeal. Cf. *Lenari* v. *Kingston*, 348 Mass. 355, 359 (1965), quoting from *Malinoski* v. *D.S. McGrath, Inc.*, 283 Mass. 1, 11 (1933) ("plaintiffs must stand on the case presented by their pleadings and evidence, and upon the findings made on the issues raised").

Turning to the merits, the plaintiffs argue that the higher price paid by Gordon to Central merely represents the shipping costs incurred in transporting the products from Indiana to Oklahoma. Charging the higher price in this context, the plaintiffs continue, is expressly permitted by G. L. c. 138, § 25D (*d*), wherein differentials in price are permitted if due to differences in "the actual cost of delivery." We disagree.

The plaintiffs accurately cite to the statute, but the statutory exemption for delivery costs does not apply here. Gordon bought products from Central for the affirmed price plus an added charge. That this added charge can be traced to the cost of shipping the alcoholic beverages to Central in Oklahoma is not material. Some of the costs of the products could certainly be traced to the cost of shipping grain to Seagram in Indiana, or to other costs of doing business. It is the price paid by Gordon to Central that the Legislature addressed in the statute, and we must deal with that here. That price was above the affirmed price and thus violated the language of G. L. c. 138, § 25B (*d*). See *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 371 Mass. 584, 592 (1976). The plaintiffs violated the statute.

2. *Sherman Act.* The commission first argues that, since the plaintiffs failed to raise an antitrust claim before the commission, they were precluded from raising it before the Superior Court and that we should not allow them to argue it here. The general rule is that it is too late to raise a claim before a reviewing court if the point had not been raised before the administrative agency. *Charron's Case*, 331 Mass. 519, 523 (1954). However, for several reasons we

agree with the trial judge that consideration of the plaintiffs' Sherman Act claim is appropriate in this case, notwithstanding the fact that they apparently failed to raise it before the commission.

As Justice Black stated in *Hormel* v. *Helvering*, 312 U.S. 552, 557 (1941), "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." Justice will be served by consideration of the antitrust claim for two reasons. First, both the plaintiffs and the commission cite the commission's decision in another case, wherein the commission, in discussing § 25B, stated, "We leave to the court to determine whether this runs afoul of the Sherman Act." *United Liquors, Inc.* v. *M.H. Gordon & Son*, slip op. at 3 (Alcoholic Beverages Control Commission, December 1, 1980). The commission has thus made it clear that it will not rule on this issue. The courts are, therefore, the only forum for such a judgment.

Second, it is at least arguable that the decision in *California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc.*, 445 U.S. 97 (1980), modified the law with respect to the Sherman Act as it relates to the facts of the instant case. The *Midcal* decision was rendered after the decision of the commission and prior to the plaintiffs' motion for summary judgment. Under such circumstances, where new interpretations of law may have materially altered the result of the commission's decision, we are inclined to allow a previously unadvanced issue to be raised before the court.[5] See *Hormel* v. *Helvering, supra* at 558-559.

The commission next argues that Gordon is barred from raising the Sherman Act claim by the doctrine of res judicata, more currently known as issue preclusion. Restatement (Second) of Judgments § 27 (1982). The commission points to *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 371 Mass. 584 (1976), as the case where

---

[5] This is especially true when we are asked to address an issue of law. If extensive fact finding is required, remand to an administrative agency is usually the better procedure. See G. L. c. 30A, § 14 (7).

Gordon could have, but failed to, litigate the Sherman Act claim. "The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Commissioner* v. *Sunnen,* 333 U.S. 591, 597 (1948), quoting from *Cromwell* v. *County of Sac,* 94 U.S. 351, 352 (1876).

We need not enter into a prolonged discussion concerning whether the Sherman Act claim could have been litigated in the prior *M. H. Gordon* case. Rather, we point to the fact that Central was not a party in that case. See generally Restatement of Judgments § 93(b) (1942); *Rudow* v. *Fogel,* 376 Mass. 587 (1978). As such, Central, at least, is not barred by any notion of issue preclusion from litigating the Sherman Act claim.

The plaintiffs argue that the scheme set up by the interplay between §§ 25B and 25D and the commission's decision in this case make out a violation of the Sherman Act. The commission counters that its application of the statutes is immune from regulation by virtue of the "State action" exemption to the antitrust laws.

It has been long established that some business transactions and some State regulations, which otherwise would be subject to antitrust laws, are immune from antitrust scrutiny pursuant to the "State action" exemption. *Parker* v. *Brown,* 317 U.S. 341 (1943). Under *Parker* v. *Brown, supra,* and its progeny, activity which is clearly articulated and affirmatively expressed as State policy and actively supervised by the State is "State action" and thus immune. *Parker* v. *Brown, supra. Goldfarb* v. *Virginia State Bar,* 421 U.S. 773 (1975). *Bates* v. *State Bar of Ariz.,* 433 U.S.

350 (1977). *Lafayette* v. *Louisiana Power & Light Co.*, 435 U.S. 389 (1978). *California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). *Community Communications Co.* v. *Boulder*, 455 U.S. 40 (1982). We must thus decide whether the commission's activity falls within the "State action" doctrine.

In *Parker*, the Court reviewed a system established by California for the price maintenance of raisins. The Court held, first, that Congress did not intend to preempt the field of State-sanctioned anticompetitive activity. *Parker* v. *Brown, supra* at 350-351. Emphasizing that pursuant to California's statutory and regulatory scheme the State had to approve the program and enforce it, the Court held that the Sherman Act did not apply.

Important gloss was not added to *Parker* until the 1970's. In *Goldfarb* v. *Virginia State Bar, supra*, the Court held that a State must compel the challenged conduct before the doctrine would apply. In *Bates* v. *State Bar of Ariz., supra* at 361, the Court said that the doctrine of State action applies if the private party "acts as the agent of the [State] under its continuous supervision." In *California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc., supra*, the Court stated that *Parker* v. *Brown, supra*, and subsequent decisions established two standards for antitrust immunity: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." *Midcal*, 445 U.S. at 105, quoting from *Lafayette* v. *Louisiana Power & Light Co.*, 435 U.S. 389, 410 (1978).

We have no doubt that the Commonwealth's scheme, as articulated by §§ 25B and 25D, satisfies the first part of the *Midcal* test. The plaintiffs do not question this conclusion. It is clear that the Commonwealth has a strong policy with respect to the prohibition of price discrimination against Massachusetts consumers. See *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n, supra* at 593.

Whether the statutory scheme under examination here passes the second part of the *Midcal* test requires closer ex-

amination. In *Midcal,* a State statute required all wine pro-
ducers and wholesalers to file price schedules with the State.
No wine was to be sold to a retailer for a price other than
that set in the schedule. Penalties for selling below the post-
ed price included fines, license suspension, or license revo-
cation. California had no direct control over wine prices,
and it did not review the reasonableness of the prices set.
The Supreme Court held that the program "does not meet
the second requirement for *Parker* immunity. The State
simply authorizes price-setting and enforces the prices es-
tablished by private parties. The State neither establishes
prices nor reviews the reasonableness of the price sched-
ules . . . . The State does not monitor market conditions or
engage in any 'pointed reexamination' of the program."
*California Retail Liquor Dealers Ass'n* v. *Midcal Alumi-
num, Inc., supra* at 105-106. The commission argues that
§§ 25B and 25D mandate, in contrast to the California
scheme rejected in *Midcal,* active supervision and thus fall
within the *Parker* "State action" doctrine. We agree.

As in the California scheme, it is not the Commonwealth
but private parties who set prices. G. L. c. 138, § 25D (*a*).
And, as in California, the Commonwealth may impose pen-
alties for violating the statute. G. L. c. 138, § 25D (*e*). But
the similarity between the two schemes ends there. While
the commission ordinarily has no direct control over alco-
holic beverage prices, in some instances, if not inconsistent
with the purposes of the statute, the commission may allow
such beverages to be sold at specific, approved prices differ-
ent from the affirmed prices. G. L. c. 138, § 25B (*d*).
*M.H. Gordon & Son* v. *Alcoholic Beverages Control
Comm'n, supra* at 590. Thus, as we stated in the first
*M. H. Gordon & Son* case, the "commission is . . . the final
arbiter of the price at which alcoholic beverages are sold by
suppliers to Massachusetts wholesalers." *M.H. Gordon &
Son,* 371 Mass. at 595. Furthermore, we believe that by
ordering that the price of an alcoholic beverage sold to a
Massachusetts wholesaler may not, other than in exception-
al circumstances, be higher than the price paid by a whole-

saler anywhere else in the country, the Commonwealth has determined that the prices set will be reasonable. Thus, the two principal objections that the Supreme Court had to the California program cannot be made about the Commonwealth's scheme. Unlike the State activity in *Midcal*, §§ 25B and 25D are not simply an authorization for private parties to engage in price fixing. The Commonwealth actively supervises the statute. The Commission ultimately controls pricing and the Legislature has established a method by which the affirmed price will be reasonable. See *George W. Cochran Co.* v. *Comptroller of the Treasury, Alcohol and Tobacco Tax Div.*, 292 Md. 3, 11 (1981). Hence, we hold that the policy of preventing price discrimination as set out in G. L. c. 138, §§ 25B & 25D, is actively supervised by the Commonwealth and that, therefore, the statutory scheme is not preempted by the Sherman Act.

3. *Commerce clause.* The plaintiffs argue, finally, that §§ 25B and 25D impose an unconstitutional burden on interstate commerce. We decline to reach this issue, as it is abundantly clear that it was not raised at the trial court and appears here an an afterthought. Unlike the claim that the plaintiffs did not violate the statute, nowhere in the record[6] is there any factual basis for us to examine the issue of the commerce clause. Because the issue is being raised for the first time on appeal, we will not consider it. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977); *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin.*, 369 Mass. 562, 565 (1976); *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974).

*Judgment affirmed.*

---

[6] The complaint does allege that the decision of the commission was "[i]n violation of constitutional provisions." In light of the judge's memorandum, however, it is readily apparent to us that the commerce clause claim was not brought to his attention.