FRANK J. FELICETTI, JR., & others[1] vs. SECRETARY OF
COMMUNITIES AND DEVELOPMENT & another.[2]

Suffolk. June 15, 1982. — July 26, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Statute,* Construction. *Home Energy Assistance Program.*

Statute 1980, c. 577, was violated by the refusal of the Secretary of Ad-
ministration, in 1980, to release certain State energy assistance funds
prior to Federal approval of the Massachusetts State plan for energy
assistance. [869-874]

In fashioning a remedy for a violation of St. 1980, c. 577, resulting from
the refusal of the Secretary of Administration in 1980 to release certain
State energy assistance funds, which were being held in escrow pend-
ing litigation, the trial judge properly determined that fiscal year 1983
funds should be used to administer the remedy, even though the funds
held in escrow were sufficient to pay for both the remedy and its ad-
ministration. [874-876]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 25, 1981.

The case was heard by *Fine, J.,* on motions for summary
judgment.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Joan C. Stoddard,* Assistant Attorney General, for the de-
fendants.

*Charles Harak* for the plaintiffs.

---

[1] The other plaintiffs are Jim Eliopoulos and several community action
agencies. The plaintiffs Felicetti and Eliopoulos brought the action in-
dividually and as representatives of a class of persons or households which
have been or will be certified eligible for energy assistance payments. The
trial judge allowed the motion for certification of class.

[2] Secretary of Administration.

NOLAN, J. At issue is whether St. 1980, c. 577, was violated by the defendants' refusal, in 1980, to release State energy assistance funds prior to Federal approval of the Massachusetts State plan for energy assistance. The plaintiffs filed this action in the Superior Court, seeking declaratory and injunctive relief. A Superior Court judge granted a preliminary injunction and, as a result, the unexpended energy assistance funds were impounded. After cross motions for summary judgment, the case was submitted to another Superior Court judge on a statement of agreed facts and various documents. The trial judge allowed, in part, the plaintiffs' motion for summary judgment. The defendants appealed, and the plaintiffs cross appealed from the remedy ordered by the judge. We transferred the case sua sponte from the Appeals Court. We hold that the statutory scheme was violated and that funds now in escrow should be distributed in accordance with the plan adopted by the trial judge.

In 1980, the United States Congress and the Commonwealth approved a program of home energy assistance authorizing payments designed to defray home energy costs for certain eligible low income households. 42 U.S.C. §§ 8601-8612 (Supp. IV 1980). St. 1980, c. 577, § 2. The program was administered by the Secretary of Communities and Development. Access to the funds appropriated by c. 577 was predicated on release of those funds by the Executive Office of Administration and Finance (EOAF). G. L. c. 29, § 9B. The Secretary of Administration interpreted c. 577 to require Federal approval of the State program before he was authorized to release the appropriated funds. Such approval was not forthcoming until November 26, 1980. The defendants argue that the trial judge erred in ruling that certain c. 577 funds should have been released on October 1, 1980.

Statute 1980, c. 577, § 2, reprinted in full in the margin,[3] made three separate appropriations. The first, item

---

[3] "EXECUTIVE OFFICE OF COMMUNITIES AND DEVELOP-MENT.

| Item | *Division of Social and Economic Opportunity.* |
|---|---|
| 3743-0100 | For the administration of a home energy assistance program; provided, that said program shall be administered in accordance with the provisions of the Federal 'Home Energy Assistance Act of 1980,' Title III of the Crude Oil Windfall Profits Tax Act of 1980 (P.L. 96-223), and any regulations adopted pursuant thereto; and provided, further, that expenditures under this item shall not exceed fifty per cent of the total cost of planning and administering the program $4,003,154 |
| "3743-2032 | For the purpose of establishing a revolving loan fund to provide for periodic advance funding for an emergency energy crisis assistance program to lessen the impact of high energy costs on low-income individuals and families; provided that the program shall be administered in accordance with the federal programs provided for in the 'Home Energy Assistance Act of 1980,' Title III of the Crude Oil Windfall Profits Tax Act of 1980 (P.L. 96-223) and the regulations promulgated pursuant thereto; and, provided, further, that no expenditure shall be made from this item until assurances are received, in writing, from the appropriate federal authorities that upon the availability of federal funds for the purpose of such federal program the commonwealth shall be reimbursed for any funds so expended; and provided further that all federal funds received for the purpose of this item shall be credited to the General Fund $4,000,000 |
| "3745-1000 | For a program of emergency energy crisis assistance for needy elderly and families whose income is above the Bureau of Labor Statistics' lower living standard but not over one hundred and seventy-five per cent of the poverty level as established by the United States Community Services Administration for one and two person families, provided that such program shall, except for the income eligibility requirement, be administered in accordance with the regulations promulgated for the federal programs provided for in the federal 'Home Energy Assistance Act of 1980,' Title III of the Crude Oil Windfall Profits Tax Act of 1980 (P.L. 96-223), and the regulations promulgated pursuant thereto; for a program of supplemental emergency energy crisis assistance for needy elderly and families whose income is not above the Bureau of Labor Statistics' |

3743-0100, set aside $4,003,154 for administration of the program. The second, item 3743-2032, set aside $4,000,000 for a "revolving loan fund to provide for periodic advance funding" which would be released only upon assurances that such money would be reimbursed by the Federal government. The third item, 3745-1000, set aside $22,500,000 to be used (1) for emergency assistance to certain households whose income was above the maximum set by the Federal government for Federal assistance, and (2) as supplemental emergency assistance to certain eligible households "provided that federal funds are not available at the time of application for assistance." Each of the three items required that the State program be administered in accordance with Federal laws and regulations. Federal law required an approved State plan as a condition to the State receiving Federal funds. 42 U.S.C. § 8607(a), (b), (d) (Supp. IV 1980). We note that, while the money in the revolving loan fund was to be expended only if assurances were first received that the Federal government would reimburse the Commonwealth for such expenditures, no such requirement was attached to the supplemental emergency energy crisis assistance appropriated in item 3745-1000. The defendants maintain that, since Federal approval of the State plan was a prerequisite to the State receiving Federal funds and since 42 U.S.C. § 8607 (a), (b), (d), and St. 1980, c. 577, required that the State program be administered in accordance with Federal law and regulations, the Legislature intended that no c. 577 funds be released until Federal approval of the State plan was re-

lower living standard, provided that federal funds are not available at the time of application for assistance by said needy elderly and families, and provided that said program is administered in accordance with the aforementioned federal regulations, and, provided further that the Executive Office of Communities and Development makes every effort to obtain an 'incentive grant' as provided for in the aforementioned federal regulations; and, for winterization and conservation related expenses including low-cost heating system adjustment, said amount not to exceed two million five hundred thousand dollars.                 22,500,000."

ceived. At least with regard to item 3745-1000, emergency assistance, we disagree.[4]

Item 3745-1000 set two conditions for the release of supplemental emergency funds. The first was that Federal funds were not available. This condition was satisfied as of the onset of the heating season on October 1, 1980.[5] The second condition was that the program be administered in accordance with Federal law and regulations. There is nothing in the Federal law or regulations which would prohibit the State from expending such supplemental funds prior to approval of the State plan. In fact, Federal regulations anticipated the advancement of State funds prior to such approval. 45 C.F.R. § 260.110 (1980).

We hold, in agreement with the trial judge, that in appropriating funds for item 3745-1000, the Legislature intended to "bridge a time gap" between the onset of the heating season and the receipt of Federal funds for those who were eligible for such Federal funds, and to provide State funds for the entire heating season for those families eligible under State but not under Federal standards. The Federal government had no interest in how the funds appropriated in item 3745-1000 were spent, and we will not go beyond the clear language of the statute to read a requirement of Federal approval. We recognize as the Legislative policy (consistent with the trial judge's conclusion), an attempt "to resolve the recurrent problem of late-arriving federal funding by enabling eligible individuals to receive state assistance in the interim." EOAF's reading of c. 577 requiring, as it did, Federal approval of the State plan prior to the release of funds, was contrary to the legislative intent expressed in the appropriation. "[T]he court must interpret the statutes

---

[4] The judge ruled that the funds appropriated by item 3745-1000 should have been released on October 1, 1980. We agree and, since the funds from that appropriation that are now in escrow are sufficient to remedy the Commonwealth's error, we need not decide whether the other two appropriations were illegally impounded.

[5] Federal funds were not available at least until November 26, 1980, the date when the State plan was approved.

as enacted by the Legislature and in a manner which will recognize the Legislature's policy decisions." *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n,* 371 Mass. 584, 589 (1976).

The defendants argue that we should accord great deference to EOAF's interpretation of the statute and, consequently, that we should hold that Federal approval of the Commonwealth's plan was required before c. 577 funds could be released. We note, however, that the Secretary of Communities and Development construed the statute to mean that such prior Federal approval was not a condition to the release of funds. Given such contrary interpretations of c. 577 within the executive branch, deference to agency construction of a statute, as a tool of statutory construction, loses much of its usefulness. In addition, while we defer to the executive branch's expertise in many matters, "the ultimate responsibility for interpreting the applicable statutes rests with this court." *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n, supra.* While the executive branch may decline to expend funds if such expenditure would be wasteful, that decision will be upheld only if there was a prior determination "that such a decision will not compromise the achievement of underlying legislative purposes and goals." *Opinion of the Justices,* 375 Mass. 827, 836 (1978). In this case, as we have discussed above, the EOAF's action in withholding the funds effectively contravened Legislative policy. In addition, such a limited impoundment was not for the purpose of limiting waste but solely because there had been no prior Federal approval. Thus, those conditions in which the executive branch has discretion "not to spend money in a wasteful fashion," *id.,* do not appear in this case.

Finally, the defendants argue that the plaintiffs' construction of the statute would make item 3743-2032, the revolving loan fund, superfluous. Money was appropriated in item 3743-2032 to provide funds for energy assistance in advance of the receipt of Federal funds. Any expenditures made pursuant to this item were to be reimbursed by the

Federal government. The plaintiffs argue that item 3745-1000 also appropriated money to be used prior to the arrival of Federal funds. While the two items may thus be viewed as somewhat duplicative in this regard, it does not follow that there was no purpose in enacting both of them. Rather, we interpret such enactment as Legislative approval of a fail-safe system to ensure that those eligible for energy assistance receive it. The purpose of item 3745-1000 was to provide assistance "provided that federal funds are not available at the time of application for assistance." As of October 1, the commencement of the heating season, Federal funds were not available. For this, and for the other reasons discussed above, the defendants violated St. 1980, c. 577, § 2, by not receiving applications and releasing funds appropriated in item 3745-1000 prior to November 26, 1980.

In her order granting summary judgment to the plaintiffs, the judge instructed the parties to submit a remedy plan to the court. The defendants submitted a plan with which the plaintiffs substantially agreed.[6] The plaintiffs' only objection was that the defendants' plan proposed that the funds to administer the remedy would be derived from the fiscal year 1982 energy assistance program. The judge essentially adopted the defendants' plan. By order of May 28, 1982, the judge substituted fiscal year 1983 funds for her previously ordered fiscal year 1982 funds for administration of the remedy.[7]

The plaintiffs argue that, since the escrow account has sufficient funds to pay both for the remedy and its administration, it would be logical to use only those funds and not

---

[6] That part of the plan which calls for the expenditure of funds now in escrow for payments to those individuals or "households which have been certified eligible for energy assistance payments on applications submitted prior to June 30, 1981, but have received less than the maximum payment for which they are eligible" is not under review before this court. In any case, we hold that such funds are legally expendable in the manner prescribed in the remedy plan.

[7] Essentially, it appears the substitution was effectuated because it was expected that by the time this court decided the case, fiscal year 1983 would have commenced.

fiscal year 1983 funds. Since, the plaintiffs' argument continues, it was the refusal to release fiscal year 1981 funds that was illegal, 1981 funds should be utilized to administer the remedy.[8]

The funds appropriated in item 3745-1000 may not be utilized in the manner the plaintiffs suggest. In addition to item 3745-1000, the Legislature separately authorized funds to be used for administration of the energy program in fiscal year 1981 in item 3743-0100.[9] It is thus clear that monies appropriated for program expenditures in item 3745-1000 were not intended to be used for administrative purposes. Consequently, any order that the funds presently in escrow be used for administration of the program would be contrary to the intent expressed by the Legislature.

Furthermore, both the act of contracting for administration of the program and the expenditures for such administration will take place in fiscal year 1983. "Appropriations by the general court . . . shall be made for the fiscal year unless otherwise specifically provided therein." G. L. c. 29, § 12, as appearing in St. 1950, c. 41. We conclude that the language of § 12 prohibits money appropriated in

---

[8] The plaintiffs additionally proposed two further alternatives to the use of fiscal 1983 funds. The first is a suggestion that the defendants make a request to the Legislature for an appropriation to cover the costs of administering the remedy plan. We decline to accept this suggestion in the narrow circumstances of this case because it appears appropriate to utilize the fiscal year 1983 energy assistance appropriation in the manner proposed by the defendants and approved by the trial judge.

The second alternative proposed by the plaintiffs was to utilize administrative funds from the 1981 energy assistance program. The trial judge permitted the balance of these funds to revert to the general fund and thus they are no longer available. Therefore, the question whether these funds could have been used to pay for administrative expenses incurred in fiscal year 1983 is probably moot and the plaintiffs' suggestion must be rejected.

[9] The balance of any funds authorized by item 3743-0100 has reverted to the general fund. See note 8, *supra*.

fiscal year 1981 from being used for contracts entered into and expenditures made in fiscal year 1983. We thus affirm the summary judgment for the plaintiffs and the judge's order that funds for the administration of the remedy plan be derived from the fiscal 1983 budget.

*So ordered.*