WILLIAM H. WOLF & another[1] *vs.* TOWN OF MANSFIELD.

No. 04-P-1752.

Bristol. October 18, 2005. - August 8, 2006.

Present: ARMSTRONG, C.J., BERRY, & TRAINOR, JJ.

*Zoning,* Amendment of by-law or ordinance, Validity of by-law or ordinance. *Municipal Corporations,* Town meeting.

Even assuming that a judge has the power to order that a new vote be conducted where confusion over a town meeting vote existed, the record in a civil action challenging the validity of an amendment to a zoning by-law did not support a claim that the voters who adopted the amendment at a town meeting were confused. [58-59]

The adoption of an amendment to a zoning by-law at a town meeting was valid, where the record of the meeting indicated that the motion put before the town meeting was for adoption of the planning board's proposed amendment to the by-law coupled with an amended footnote, and there was no uncertainty that the vote might merely be to amend the language in an article in the warrant; therefore, the judge in a civil action challenging the validity of the amendment properly granted summary judgment in favor of the town. [59-60]

CIVIL ACTION commenced in the Superior Court Department on April 7, 2003.

The case was heard by *Richard T. Moses,* J., on a motion for summary judgment.

*David T. Gay* for the plaintiffs.

*Robert S. Mangiaratti* for the defendant.

ARMSTRONG, C.J. The planning board of Mansfield (town) proposed an amendment to its zoning by-law that subsequently was declared adopted at a town meeting on October 29, 2002. The plaintiffs opposed the amendment at the town meeting but were outvoted. They then filed a complaint in the Superior Court seeking a declaration that the procedures followed at the

[1]Kathleen M. (Pittman) Wolf.

town meeting were defective and that the amendment was adopted invalidly. Having lost in the Superior Court, the plaintiffs bring this appeal.

The zoning by-law of the town, following the recommendations of a master plan developed in the 1980's, had permitted high density residential construction (one unit per 10,000 square feet for single-family; one unit per 7,500 square feet for multi-family) in the industrial 2 zoning district. The planning board's purpose in 2002 was to amend the by-law to preclude such multi-family, high density development in part of the district, where it determined it was incompatible with low density, single-family construction in adjacent residential districts. The by-law amendment as first proposed by the planning board and advertised as article 1 in the town meeting warrant provided that the only permitted residential construction in the portions of the industrial 2 zoning district south of Route 106 was single-family construction, subject to a minimum lot size of 60,000 square feet, and such use was permissible by special permit only.

After publication of the warrant, but before the town meeting, the planning board noticed that the proposed by-law amendment as stated in the warrant retained the requirement that a special permit be obtained for any residential construction in the district. It voted to amend the proposal to provide that single-family dwellings could be constructed as of right on lots of 60,000 square feet in portions of the industrial 2 district south of Route 106. The planning board prepared a single page sheet of explanation to be given to townsfolk as they arrived at the town meeting, showing at the top the proposed zoning by-law language as it appeared in the warrant and, below, the proposed zoning by-law language as later amended by the planning board.[2]

When article 1 was taken up, a member of the planning board

---

[2]The page was entitled "Article 1 — Proposed Amendment." The first paragraph, under the heading "Original Article 1," set out the zoning by-law amendment as originally proposed by the planning board, i.e., as it appeared in the warrant. The second paragraph, under the heading "Proposed Amendment to footnote 1," explained that the planning board had met on October 16 and had amended its own proposal to clarify that the single-family residential construction in the industrial 2 district (with the 60,000 square foot area requirement) south of Route 106 would *not* require a special permit but would

explained the principal reasons for the proposed by-law amendment, namely to make residential construction in the industrial 2 district south of Route 106 compatible with the type and density of construction in adjacent districts, and to thin potential development to avoid overburdening town services. He closed by pointing out that the planning board, as to land south of Route 106, was also recommending elimination of the special permit requirement that previously had applied to residential construction anywhere in the industrial 2 district. The town's planning director explained why the planning board's encouragement of high density residential construction in the 1980's had modified over the dozen or so years thereafter; and two persons who owned land in the portions of the industrial 2 district affected by the amendment rose to argue against increasing the land area requirement for residential construction. No debate was conducted concerning the planning board's modification of its own proposal so as to allow residential construction as of right on 60,000 square foot lots.

The question was then called, and the motion was carried by the requisite two-thirds vote (G. L. c. 40A, § 5, fifth par.), first by a show of hands, then by a standing count. The moderator declared the proposed zoning amendment adopted.

The plaintiffs argue that the proceedings were defective because only one vote was taken. Two were required, they argue: one to amend the text of the proposed by-law change as set out in the warrant to the different text advocated by the planning board at the town meeting; and one to adopt the amended text as part of the town's zoning by-law. At the very least, they argue, there was sufficient confusion surrounding what was being voted on that the Superior Court judge should have ordered the process repeated.

We address the arguments in reverse order. The plaintiffs cite no authority for the proposition that confusion over a town meeting vote empowers a judge to order that a new vote be conducted.

be permitted as of right.

As originally proposed, the critical footnote 1 language read: "South of Route 106 only, at density allowed in Residence 1 district." The amended proposal showing the footnote 1 language read: "South of Route 106 only, [*as a By-Right use*], at density allowed in Residence 1 district."

Even if we assume such a power, the record fails to support the plaintiffs' claim that voters were confused. On the face of the town meeting transcript, the residents understood they were being asked to vote on the planning board's revised proposal, not a mere amendment to the proposal set out in the warrant. Moreover, the moderator's clear instructions that "[t]his is a zoning change which will require a two-thirds vote" should have dispelled any confusion over the nature of the vote. Not a single voter protested or expressed concern or confusion either before or after the overwhelming vote in support of the proposal. The minutes of the town meeting contain nothing that reasonably can be read as indicative of confusion.[3]

As to the voting, there was no necessity for a separate vote to amend the text of article 1 as it had appeared in the warrant. Apart from the facts that town meetings are not strictly confined to formal rules of parliamentary procedure, see *Zaskey* v. *Whately*, 61 Mass. App. Ct. 609, 617-618 (2004); Randall & Franklin, Municipal Law and Practice § 7.7 (5th ed. 2006), and that attendees often conflate warrant articles with motions, see Johnson, Trustman, and Wadsworth, Town Meeting Time: A Handbook of Parliamentary Law 61 (3d ed. 2001), the fact remains that the purpose of the warrant and the articles contained therein is merely to inform the residents of the town of the time and place of the meeting and the subjects that will be discussed and acted on. G. L. c. 39, § 10. *Coonamessett Inn* v. *Chief of the Falmouth Fire Dept.*, 16 Mass. App. Ct. 632, 634 (1983). Nor can it be doubted that the meeting properly could act on an amended version of the proposal as stated in the warrant article. Articles are "the mere abstracts or heads of the propositions which are to be laid before the inhabitants for their action; and matters incidental to and connected with such propositions are alike proper for their consideration and action. If it were otherwise, and the articles were to be the subject of a

---

[3]The plaintiffs rely on the following statements by the moderator. Just before the vote, the moderator said: "Article 1 somebody wants me to waive the reading? . . . Good, I haven't the foggiest idea to read this thing anyhow." Following the standing count, the moderator declared: "Okay, the motion passes ninety-eight in favor, eighteen opposed. So it is rezoned, or the zoning has been changed, or whatever has been done." To read these observations as showing something other than down-country folksiness is pure speculation.

very critical analysis, much confusion and delay might ensue, and towns would be as often employed in discussing the construction of the articles in the warrant, as in the consideration of the subjects embraced in them." *Haven* v. *Lowell*, 5 Met. 35, 41 (1842). See Randall & Franklin, Municipal Law and Practice, *supra* at § 7.4.

In this case, the motion put before the town meeting was for adoption of the planning board's proposed amendment to § 3.3 of the schedule of principal use regulations, coupled with the amended footnote allowing single-family residences as of right on 60,000 square foot lots located in the industrial 2 district south of Route 106.[4] There was no uncertainty that the vote might be merely to amend the language of article 1 of the warrant. Such an amendment would have required only a majority vote to carry, but the moderator informed the attendees that the motion called instead for amendment of the zoning by-law and hence required a two-thirds majority for adoption. See G. L. c. 40A, § 5.

The records of the town meeting being clear that the amended article 1 proposal was adopted validly, the Superior Court judge acted correctly in ordering summary judgment for the town.

*Judgment affirmed.*

---

[4]After a member of the planning board presented the proposal the planning board was advocating, the moderator then asked, "Now, is this amended article the one that the people in the hall have in their possession?" See note 2, *supra*. An unidentified person replied, "They all should have a copy of the proposed amendment, moderator, yes." The moderator then stated, "Okay, Article 1, proposed amendment, this is the *motion* that is put on the floor" (emphasis supplied). An unidentified person then replied, "That's correct."