NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11772

CHARLENE GALENSKI  vs.  TOWN OF ERVING & others.[1]

Franklin.     January 6, 2015. - April 17, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, Hines, JJ.

Public Employment, Retirement benefits.  School and School Committee, Retirement benefits, Group insurance.  Municipal Corporations, Group insurance, Allocation of insurance premiums.  Insurance, Group, Premiums.  Retirement.

Civil action commenced in the Superior Court Department on November 21, 2012.

The case was heard by John A. Agostini, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Patricia M. Rapinchuk for the defendants.
Eric Lucentini (Sandra Lucentini with him) for the plaintiff.

DUFFLY, J.  Charlene Galenski retired in 2012 after six

years of service as a school principal in the town of Erving

---

[1] Board of selectmen of Erving and treasurer of Erving.

(town); she previously had been a long-time public school teacher in other municipalities in the Commonwealth.  Galenski then sought continued health insurance coverage and contribution by the town to the cost of her group health insurance premiums. In 2001, the town had voted to adopt G. L. c. 32B, § 9E, which required it to contribute over fifty per cent of the health insurance premiums of all of its retirees.  Before employing Galenski, however, the town had enacted a policy stating that it would contribute only to the group health insurance premiums of retired employees who had retired after a minimum of ten years of employment with the town.  Although Galenski was permitted to remain a member of the town's group health insurance plan after she retired, the town determined she was not eligible for any contribution by the town to her health insurance premiums.

Galenski filed a complaint in the Superior Court contending that the town had violated her right to payment by the town of a portion of her group medical insurance premiums, as required under G. L. c. 32B, § 9E; she sought declaratory and injunctive relief, and also raised a claim of estoppel based on detrimental reliance.  A judge of the Superior Court allowed Galenski's motion for summary judgment on the first two claims, denied the town's cross motion for summary judgment, and issued a permanent

injunction prohibiting the town from enforcing its policy.[2]  The town appealed, and we transferred the case to this court on our own motion.  We conclude that, because the town had voted to accept G. L. c. 32B, a local option statute that governs group health insurance for municipal employees, the terms of the statute govern whether and in what amounts the town must contribute to the cost of a retiree's health insurance premiums.  Accordingly, the town's retirement policy imposing a minimum term of service as a prerequisite to premium contributions from the town is invalid.

1.  Factual background.  We recite the facts as set forth in the judge's decision, supplemented by undisputed facts in the record.  In 1956, the town voted to accept G. L. c. 32B; by accepting certain local option provisions of that statute, the town was required to make group health insurance coverage available to retired employees.  In 2001, the town's voters chose to accept G. L. c. 32B, § 9E.[3]  General Laws c. 32B, § 9E,

---

[2] Final judgment was entered only as to the first two claims; the claim for detrimental reliance is not before us.

[3] The town of Erving (town) accepted G. L. c. 32B, § 9E, by a majority vote on the following ballot question, the language of which is prescribed by the statute:

> "Shall the town, in addition to the payment of fifty percent of a premium for contributory group life, hospital, surgical, medical, dental, and other health insurance for employees retired from the service of the town . . . pay a subsidiary or additional rate?"

requires municipalities to contribute to the group health insurance premiums of retired employees at a rate determined by the municipality, but that rate must exceed fifty per cent of the cost of the insurance premiums.[4]

In February, 2006, the town enacted a retirement policy restricting participation in its group health insurance plan to those employees who retired from the town "after a minimum of ten (10) years of employment by the [t]own." The policy further provided that "[a]n eligible retiree with less than ten (10) years of employment with the [town] may choose to continue health insurance coverage through the [t]own's carrier at [one hundred per cent] of the retiree's cost."

Galenski began employment as the principal of Erving Elementary School on July 1, 2006.[5] At that time, she was a long-time educator with over thirty years of creditable service[6] as a public school teacher in the Commonwealth.[7] As an active

---

[4] During the time frame at issue here, the town's rate of contribution under G. L. c. 32B, § 9E, was seventy-nine per cent of the cost of a retiree's health insurance premiums.

[5] Charlene Galenski was informed of the town's retirement policy before she commenced employment.

[6] An employee must have a minimum of ten years of creditable service to qualify for superannuation retirement. See G. L. c. 32, § 5 (1) (m).

[7] Galenski spent the first thirty years of her public school teaching career in other municipalities, at least some of which had accepted G. L. c. 32B, § 9A or 9E.

employee, Galenski was enrolled in the town's health insurance plan, and the town contributed to the cost of her health insurance premiums. Galenski retired in good standing in October, 2012, after six years of service to the town.

At a meeting on October 1, 2012, the town's board of selectmen determined that Galenski, although eligible to continue to participate in the town's group health insurance plan, would be responsible for one hundred per cent of her insurance premiums. After her retirement, Galenski continued to participate in the town's group health insurance plan, paying the entire amount of the monthly premiums.[8]

2. Discussion. a. Standard of review. We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 799 (2013). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

b. Statutory framework. General Laws c. 32B is a local-option statute governing various insurance benefits for employees of municipalities and other State political

---

[8] The judge's order on the town's cross motion for summary judgment noted that Galenski was at that time still paying one hundred per cent of the then approximately $1,200 monthly premium.

subdivisions.  Cioch v. Treasurer of Ludlow, 449 Mass. 690, 690 n.2 (2007).  The purpose of G. L. c. 32B "is to provide a plan of group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental and other health insurance for certain persons in the service of counties . . . , cities, towns and districts and their dependents."  G. L. c. 32B, § 1.

As a local-option statute, G. L. c. 32B "does not take effect until a governmental unit accepts it."  Connors v. Boston, 430 Mass. 31, 37 (1999).  "Once accepted, however, it provides the exclusive mechanisms by which and to whom the [municipality] may provide group health insurance."  Id.  See Yeretsky v. Attleboro, 424 Mass. 315, 316-317 (1997).  Where a municipality has exercised its local option to provide group health insurance for its employees through acceptance of G. L. c. 32B, "employees are automatically covered by group insurance unless the employee 'give[s] written notice . . . indicating that he is not to be insured for such coverages.'"  McDonald v. Town Manager of Southbridge, 39 Mass. App. Ct. 479, 480 (1995), S.C., 423 Mass. 1018 (1996), quoting G. L. c. 32B, § 4.

Under the "default" provision of G. L. c. 32B, § 9, if group health insurance is offered to a municipality's active employees, such insurance coverage "shall be continued [for retired employees] and the retired employee shall pay the full

premium cost, subject to the provisions of [G. L. c. 32B, § 9A or 9E,] whichever may be applicable."  See Yeretsky v. Attleboro, supra at 317.  In lieu of the default provision under G. L. c. 32B, § 9, a municipality adopting G. L. c. 32B may opt to accept one of these two local options, which require contributions by the municipality to a retiree's group insurance premiums.  By adopting G. L. c. 32B, § 9A, a municipality chooses to pay fifty per cent of a retiree's insurance premiums; if a municipality adopts G. L. c. 32B, § 9E, the municipality then "may elect to pay 'a subsidiary or additional rate' greater than fifty per cent of a retiree's health insurance premium." Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 565 (2015).  In addition, G. L. c. 32B, § 9E, mandates that "[n]o governmental unit . . . shall provide different subsidiary or additional rates to any group or class within that unit."

c.  Validity of the town's term of service requirement. The town contends that its term of service policy, restricting the town's obligation to contribute to retirees' health insurance premiums to those retirees who were employed by the town for a minimum of ten years, is consistent with the language and purpose of G. L. c. 32B, § 9E.  The town relies on Cioch v. Treasurer of Ludlow, 449 Mass. at 696-697, for the proposition that a town policy or regulation permissibly may limit a retiree's eligibility for insurance coverage under G. L. c. 32B,

§ 9E.  The town construes the prohibition in G. L. c. 32B, § 9E, against affording different premium contribution rates to "any group or class" as meaning only that groups such as teachers, fire fighters, and police officers cannot, through collective bargaining, negotiate different rates of contribution for their members.  The town argues that such collective bargaining by separate groups could expose a municipality to expensive administrative costs, thereby defeating what it views to be the Legislature's purpose of cost containment.

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  In interpreting a statute, we look first to its plain language. Worcester v. College Hill Props., LLC, supra at 138.

Municipalities accepting G. L. c. 32B, § 9E, "shall . . . in addition to the payment of fifty per cent of a premium for contributory group life, hospital, surgical, medical, dental and other health insurance for employees retired from the service of

the town, and their dependents, pay a subsidiary or additional rate" that is determined by vote of the municipality.  "The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation."  Hashimi v. Kalil, 388 Mass. 607, 609 (1983).  The statute, by its terms, is mandatory, and "once accepted the municipality must comply with the statute's unambiguous mandates," notwithstanding that the statute was adopted voluntarily.  Adams v. Boston, 461 Mass. 602, 609 (2012).  Because the town chose to adopt G. L. c. 32B, § 9E, the plain language of that section mandates that the town contribute more than fifty per cent of the premiums of "employees retired from the service of the town."

As stated, an "employee" within the meaning of G. L. c. 32B, is defined as "any person in the service of a governmental unit . . . who receives compensation for any such service, whether such person is employed, appointed or elected by popular vote, . . . provided, however, that the duties of such person require not less than [twenty] hours, regularly, in the service of the governmental unit during the regular work week of permanent or temporary employment."  G. L. c. 32B, § 2. As a public school principal, Galenski held a position that falls within this definition.  As an employee with more than thirty years of creditable service, Galenski was eligible to receive retirement benefits.  See G. L. c. 32, § 5 (1) (m); note

6, supra.  Because she was a member of the town's group health insurance plan while employed as the principal of Erving Elementary School, Galenski was statutorily entitled to continued group health insurance as a retiree.  See G. L. c. 32B, § 9.  Cf.  Lexington Educ. Ass'n v. Lexington, 15 Mass. App. Ct. 749, 752 (1983) (rejecting town's "self-imposed and super-statutory" minimum hours requirement for eligibility for health insurance benefits as inconsistent with statutory definition of "employee").

In describing contributions by a municipality to its retirees' insurance premiums, G. L. c. 32B, § 9E, further mandates that "[n]o governmental unit . . . shall provide different subsidiary or additional rates to any group or class within that unit."  Identical language appears in G. L. c. 32B, § 7A, which governs contributions to insurance premiums of active employees.

On the date of Galenski's retirement, the town's retirement policy provided, in pertinent part:

> "For a retiree . . . to qualify for participation in the [t]own's group insurance . . . [t]he employee must qualify for county or teacher's retirement and must retire from the [town] after a minimum of ten (10) years of employment by the [t]own . . . , having been eligible for health insurance for all of the ten (10) years . . . .
>
> ". . .
>
> "An eligible retiree with less than ten (10) years of employment with the [town] may choose to continue health

insurance through the [t]own's carrier at [one hundred per cent] of the retiree's cost."

The requirement that a retiree "must retire from the [town] after a minimum of ten (10) years of employment by the [t]own" in order to receive contribution towards insurance premiums is not consistent with G. L. c. 32B, § 9E.  The town's requirement of a minimum term of service places retirees like Galenski into a subclass of retirees who are not entitled to contribution to their health insurance premiums, despite otherwise qualifying for superannuation retirement benefits.

"[A] municipality may not enact a bylaw, policy, or regulation that is inconsistent with State law."  Cioch v. Treasurer of Ludlow, 449 Mass. at 699.  The town's retirement policy is inconsistent with G. L. c. 32B in two significant respects and, accordingly, is invalid.  First, the retirement policy establishes different insurance premium contribution rates for different groups of employees, despite the "literal mandate of equal treatment for all groups of employees with respect to employer contributions toward insurance costs."  See Swampscott Educ. Ass'n v. Swampscott, 391 Mass. 864, 867 (1984) (interpreting identical language in G. L. c. 32B, § 7A [d], which governs insurance premium contribution for active employees, where "town has undertaken voluntarily to pay more than [fifty per cent] of one group of employees' insurance

costs"). Second, the retirement policy seeks to exempt the town from contributing to any portion of the insurance premiums for one group of employees, notwithstanding that the town has adopted G. L. c. 32B, § 9E, which by its plain language obligates the town to contribute more than fifty per cent of the costs of that group's insurance premiums.

Our interpretation of the clear statutory language is consistent with the Legislature's manifest purpose in enacting G. L. c. 32B, which is to provide group health insurance for municipal employees. See G. L. c. 32B, § 1. The statute provides local governments "with a volume of purchasing power sufficient to assure that their employees will receive the highest possible level of benefits at the lowest possible cost." Connors v. Boston, 430 Mass. at 39, quoting 1967 Senate Doc. No. 1174, at 4. The town argues that its retirement policy simply furthers the cost containment goals of G. L. c. 32B. This argument is unavailing. The purpose of the statute is to create "a 'comprehensive scheme of coverage' for governmental employees" by "gather[ing] them in large groups so as to effect economies of scale" (citation omitted). McDonald v. Town Manager of Southbridge, 39 Mass. App. Ct. at 480. The goal of cost containment does not, however, permit the town to seek further reduction of its costs through a policy that eliminates its obligation to contribute to the insurance premiums of a

certain subset of retirees.

Invalidation of a town regulation is appropriate where "the purpose of the statute cannot be achieved in the face of the local by-law" (citation omitted).  Connors v. Boston, supra at 35.  The town's term of service policy is inconsistent with the "comprehensive scheme of coverage" established by G. L. c. 32B, because it treats retired employees differently based on their years of service to the town, and precludes them from receiving benefits to which they are statutorily entitled.  See McDonald v. Town Manager of Southbridge, supra at 481.

The town's reliance on Cioch v. Treasurer of Ludlow, 449 Mass. at 696-697, is misplaced.  In that case, we addressed the validity of a municipality's policy requiring a retiree to have been enrolled in a group health insurance plan while an active employee in order to continue that coverage during retirement.  Id. at 696.  The plaintiff was a retiree who had been enrolled in her husband's health insurance plan while she was an active employee of a municipality.  Three years after her retirement, when her husband retired, she sought to enroll in one of the municipality's health insurance plans.  Id. at 692-693.  We noted that the statute "accords municipalities substantial latitude in the adoption of 'such rules and regulations, not inconsistent with [G. L. c. 32B], as may be necessary for [its] administration.'"  Id. at 697-698, quoting G. L. c. 32B, § 14.

We upheld the municipality's policy because "[n]othing in the plain language of G. L. c. 32B, §[] 9 or 16, requires a municipality to permit a retiree who has not enrolled in a municipal health insurance plan while employed, to enroll in a municipal health insurance plan after she has retired, or precludes it from doing so."  Cioch v. Treasurer of Ludlow, supra at 698.  We concluded that, while a municipality permissibly could limit enrollment to active employees, it remained obligated by the statute to "provide[] for continued coverage of those employees during their retirement."  Id. at 699.

Finally, we reject the town's assertion that its "policy is not unlike pension benefits that are calculated based on years of service," and its suggestion that its policy furthers reasonable cost containment efforts because it should not be held "responsible for paying a significant portion of [an] employee's health insurance premium in retirement [who had worked for other municipalities]."[9]  To the contrary, the

_____

[9] The town also claims that its policy is a valid exercise of its power under the Home Rule Amendment, which provides that a town may "exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court." Art. 89, § 6, of the Amendments to the Massachusetts Constitution.  Because Massachusetts has "the strongest type of home rule," municipal action is presumed to be valid unless preempted by State law.  Connors v. Boston, 430 Mass. 31, 35 (1999).  The town argues that its policy is not inconsistent

Legislature was cognizant of the potential consequences to a town which, because it has chosen to accept G. L. c. 32B, § 9E, must, as the last employer in a retiree's long-term public service career, contribute to the premiums of such retirees. The Legislature enacted G. L. c. 32B, § 9A½, specifically to address those concerns. Where a retiree has served a number of municipalities, G. L. c. 32B, § 9A½,[10] creates a reimbursement scheme between those employing municipalities, and allows the municipality from which the employee retired to recover its proportional share of contributions from other municipalities

with G. L. c. 32B, which establishes only a "sparse framework," and, therefore, that the Legislature did not intend to preempt municipal action such as the town's retirement policy. Our determination that the town's policy is in conflict with the language and intent of G. L. c. 32B, §§ 9 and 9E, disposes of this claim. Cf. Connors v. Boston, supra at 39-40, citing Boston Gas Co. v. Newton, 425 Mass. 697, 699 (1997) (addressing question of preemption, and holding that local executive order expanding definition of dependent was inconsistent with language and intent of G. L. c. 32B).

[10] Pursuant to G. L. c. 32B, § 9A½,

"Whenever a retired employee or beneficiary receives a healthcare premium contribution from a governmental unit in a case where a portion of the retiree's creditable service is attributable to service in [one] or more governmental units, the first governmental unit shall be reimbursed in full, in accordance with this paragraph, by the other governmental units for the portion of the premium contributions that corresponds to the percentage of the retiree's creditable service that is attributable to each governmental unit. The other governmental units shall be charged based on their own contribution rate or the contribution rate of the first employer, whichever is lower."

where the retiree had been employed.

The plain language of this provision supports our interpretation of G. L. c. 32B, § 9E, as reflecting the Legislature's intent that a municipality that has chosen to adopt that section must contribute to the premiums of all of its retirees, regardless whether, as active employees, their years of creditable service were performed largely in other municipalities.[11]  We give effect to all provisions of a statute, which "must be viewed 'as a whole.'"  Wolfe v. Gormally, 440 Mass. 699, 704 (2004), quoting 2A N. Singer, Sutherland Statutory Construction § 46.05, at 154 (6th ed. 2000).  The town's interpretation of the statutory scheme is inconsistent with G. L. c. 32B, § 9A½,, which reflects the Legislature's understanding that the last employer in line will be required to contribute to the insurance premiums of its retirees, notwithstanding that the retiree may have spent a substantial

---

[11] The town argues that, notwithstanding G. L. c. 32B, § 9A½, it should be permitted to exclude retirees who served the town for fewer than ten years from its insurance premium contributions, arguing, essentially, that G. L. c. 32B, § 9A½, does not do enough to contain costs.  The town contends that it should be permitted to further reduce costs by limiting the class of retirees eligible for premium contributions to those employed by the town for longer periods of service.  The town notes, for example, that although it may seek reimbursement from other municipalities under G. L. c. 32B, § 9A½, it first must contribute to the premiums, and may seek reimbursement only the following year.  It notes also that it must seek reimbursement based on the lower of the municipalities' rates of contribution. Concerns that the cost containment measures established by the statute are inadequate may be addressed to the Legislature.

portion of her career working for a different municipality.

Judgment affirmed.