NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12780


SUSAN BOSS  vs.  TOWN OF LEVERETT.


     Franklin.     December 9, 2019. - April 23, 2020.

  Present:  Gants, C.J., Lenk, Lowy, Budd, Cypher, & Kafker, JJ.


Public Employment, Retirement benefits.  Municipal Corporations,
     Insurance, Allocation of insurance premiums, Town meeting,
     Warrant for town meeting.  Statute, Construction.



     Civil action commenced in the Superior Court Department on
October 28, 2016.

     The case was heard by Mark D. Mason, J., on motions for
summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Rosemary Crowley (Erin J. Meehan also present) for the
defendant.
     Ryan P. Dunn for the plaintiff.


     CYPHER, J.  A retired town employee, Susan Boss, filed a

complaint to obtain a declaration that the town of Leverett

(town) was obligated to pay fifty percent of the full premium

cost for health insurance for retired town employees and their

dependent spouses. This is an appeal by the town from the grant of summary judgment in Boss's favor by a judge in the Superior Court. The town also appeals from the corresponding denial of the town's cross motion for summary judgment. We transferred this case sua sponte from the Appeals Court. There are two issues presented here: first, whether the town's adoption of G. L. c. 32B, § 9A, obligated it to contribute toward the premiums associated with retirees' dependents; and second, if G. L. c. 32B, § 9A, is interpreted to include these premiums, whether it effectively was adopted at the town meeting on April 24, 2004.

We hold that by adopting G. L. c. 32B, § 9A, the town was required to cover fifty percent of the premiums for both retirees and the retirees' dependents. We further hold that the town successfully adopted G. L. c. 32B, § 9A, at the town meeting held on April 24, 2004. For the reasons that follow, we affirm.

Background. 1. Legislative proceedings of the local town meeting in 2004. The town is a municipal corporation located in Franklin County that, pursuant to G. L. c. 32B, provides access to group health insurance coverage for current and retired employees of the Leverett public schools.

On April 24, 2004, the town convened its annual town meeting, during which the town's citizens voted on proposed

bylaws and amendments.[1]  In accordance with G. L. c. 39, § 10, a warrant was posted before the town meeting to inform the town's citizens of the matters on which to be voted.[2]  Two of the articles contained in the warrant, articles 2 and 4, concerned retirement benefits.  Article 2 of the warrant proposed (1) the adoption of specific language regarding retiree health insurance premiums and (2) a budget appropriation for specified insurance premiums.  It aimed "to raise and appropriate the sum of $23,500 to pay one-half the premium costs payable for life and medical insurances in [fiscal year] 2005 for retired [town] employees."[3]

---

[1] The process for proposing a bylaw or subsequent amendment is detailed in chapter 11 of the town's code.  Code of Leverett, sections 11-1 to 11-9 (Apr. 2011).  See Code of Leverett, sections 1-2, 9-6.  Under section 11-5 of the code, any ten voters of the town may, through a written petition to the select board, include an article in the warrant of a scheduled annual town meeting.  Under section 11-6, articles must be submitted to the select board thirty days prior to the town meeting.

[2] The requirements for a warrant are subject to G. L. c. 39, § 10.  Notice must be given at least seven days before the annual town meeting, and the warrant must state the time and place of the meeting and the subjects on which to be acted.

[3] The language adopted under article 2 was as follows:

"The town will pay [fifty percent] of the cost of an individual health plan offered by the town for a retiree as long as the retiree notifies the town of his/her choice to enroll in a Leverett health insurance plan within [sixty] days of retirement from the town or a qualifying event; the individual was enrolled in a Leverett health insurance program at the time of retirement; the retiree is older than the eligible retirement age; and the retiree has a minimum of ten (10) years of credible service with the [town] in a beneficial position.  Employees eligible for

Article 4 was a ballot question that used the language mandated by G. L. c. 32B, § 9A: "Shall the town pay one-half the premium costs payable by a retired employee for group life insurance and for group general or blanket hospital, surgical, medical, dental and other health insurance?"[4]

At the town meeting, article 2 was moved for a vote as written. The motion for the vote was then seconded and carried unanimously. Because article 2's passage was contingent upon the affirmative vote of the ballot question presented in article 4, the polls were opened for voting on article 4. Attendees cast their ballot for article 4, which passed with 184 ballots in favor and twenty-one opposed. Therefore, both articles 2 and 4 passed.

_____

Medicare shall be required to obtain such coverage and comply with [G. L. c. 32B, § 18].

"A retiree, who has not reached Medicare-eligible age, can apply [fifty percent] of the individual premium of his/her chosen health plan to the family or employee-plus one premium of the same health plan until the retiree reaches Medicare-eligible age."

[4] General Laws c. 32B, § 9A, provides in part: "A town shall provide for the payment by vote of the town at a town meeting or if a majority of the votes cast in answer to the following question which shall be printed on the official ballot to be used at an election in said town is in the affirmative: -- 'Shall the town pay one-half the premium costs payable by a retired employee for group life insurance and for group general or blanket hospital, surgical, medical, dental and other health insurance?'"

2.  Boss's employment history and health insurance coverage.  Boss worked as a teacher for Leverett public schools from 1990 until her retirement in 2015.  During her employment, she subscribed to health insurance coverage through a group plan.  The "1+1" or "Employee Plus One" family group plan was offered to all Leverett public school employees pursuant to G. L. c. 32B.  Before her retirement, the "1+1" plan covered Boss and her dependent spouse.

Nearing her retirement, Boss was informed that after retirement she would be able to continue with her family plan but that the town would not pay fifty percent of her husband's premium coverage.  Boss consulted with the Leverett Education Association (association) about this issue.[5]  The association stressed to the town that the payments should be made for both the retiree and his or her dependents.

Boss opted to continue participating in the group health insurance plan offered by the town.  However, since her retirement, the town has paid fifty percent of Boss's premium contribution based only on the premium cost for individual coverage.  Because the town has covered only fifty percent of her contribution, Boss has been responsible for covering the

---

[5] The Leverett Education Association is the sole agent for the purposes of collective bargaining on behalf of the teachers in Leverett public schools.

balance for the "1+1" plan premium in order to continue coverage for her spouse.  In November 2017, Boss became Medicare eligible, and began to receive Medicare coverage, pursuant to article 2 guidelines,[6] with the town contributing one-half of the premium cost of that coverage.  Since that time, Boss has continued to pay the full premium for her husband's individual plan.

3.  Provisions of G. L. c. 32B previously adopted by the town.  The town previously adopted G. L. c. 32B, §§ 7A, 9D, and 10, in 1968.  Code of Leverett, Appendix, chapter A232, section A (Apr. 2011).  According to G. L. c. 32B, § 10, once the local option or one of its sections is accepted, it cannot be rescinded or revoked.  Municipal employees will be covered automatically unless they give written notice "indicating that [they are] not to be insured for such coverages."  G. L. c. 32B, § 4.  In addition, § 7A clarifies that once the local option is adopted, the municipal employee shall cover "fifty per cent of a premium for the insurance of the employee and his dependents and the government unit shall contribute the remaining fifty per cent of such premium."  G. L. c. 32B, § 7A (a).  This includes additional premiums for an employee's dependent child who is

---

[6] Under article 2, adopted by the town, "[e]mployees eligible for Medicare shall be required to obtain such coverage."

nineteen years or older and is mentally or physically incapable of earning his or her own living. Id. Further, G. L. c. 32B, § 9D, provides for the town's contribution of one-half of the premiums payable by the surviving spouse of an employee or retiree.

Discussion. 1. Standard of review. "We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Galenski v. Erving, 471 Mass. 305, 307 (2015). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). In addition, "[b]ecause this case involves questions of statutory interpretation, our review is de novo." Sheehan v. Weaver, 467 Mass. 734, 737 (2014).

2. Interpretation of G. L. c. 32B, § 9A. We first address whether the adoption of G. L. c. 32B, § 9A, requires that municipal employers pay fifty percent of the premiums for both retired employees and their dependents. The town argues that the plain language of the statute does not include the word "dependents," and that therefore § 9A does not require it to contribute to the premium costs for a retired employee's dependents. The town distinguishes § 9A from other sections in c. 32B that do expressly include the word "dependents." See

G. L. c. 32B, §§ 7, 7A, 9E.[7]  Boss emphasizes that a town's § 9A contributions encompass fifty percent of the total premium costs of the retiree's insurance plan, not just an individual's premium costs.  For the reasons that follow, we hold that the adoption of § 9A requires municipal employers to pay fifty percent of the health insurance premiums for both retired employees and their dependents.

In Sullivan v. Brookline, 435 Mass. 353, 360 (2001), we emphasized that "[a] fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning."  If the language is clear and unambiguous, it must be interpreted as written.  See Telesetsky v. Wight, 395 Mass. 868, 872 (1985).  We look at the statute in its entirety when determining how a single section should be construed.  See Chin v. Merriot, 470 Mass. 527, 532 (2015); Commonwealth v. Keefner, 461 Mass. 507, 511 (2012).  In addition, when ambiguities are present, the principles of statutory construction require that we consider legislative

---

[7] The town, in its memorandum in opposition to Boss's summary judgment motion, contends that "because [§] 9A makes no reference to payment of premiums on behalf of a retiree's spouse but [§] 9E explicitly does [make such a reference], the statutory maxim 'expressio[] unius est exclusio[] alterius,' meaning 'the expression of one thing in a statute is an implied exclusion of other things not included in the statute' applies. Skawski v. Greenfield Investors Prop. Dev. LLC, 473 Mass. 580, 588 (2016), quoting Bank of Am., N.A. v. Rosa, 466 Mass. 613, 619 (2013)."

intent when interpreting a statute. See Telesetsky, supra; Commonwealth v. Galvin, 388 Mass. 326, 328 (1983). See also Chin, supra.

a. Plain meaning. We begin by examining the language of the statute. General Laws c. 32B, § 9A, states in relevant part: "[A town] may provide that it will pay one-half of the amount of the premium to be paid by a retired employee under the first sentence of [§] 9."[8] The plain meaning of § 9A requires that once the town has adopted the section, it "pay one-half of the amount of the premium to be paid by a retired employee" (emphases added). The phrase is clear: the town must contribute fifty percent to that which the retired employee is required to pay. The section does not address what type of insurance plan it will cover; rather, it focuses on payment.[9]

_____

[8] The first sentence of G. L. c. 32B, § 9, states in relevant part:

"The policy or policies of insurance shall provide that upon retirement of an employee, . . . the retired employee shall make payment of the full premium cost, subject to the provisions of [§ 9A] or [9E], whichever may be applicable, of the average group premium as determined by the appropriate public authority for such insurance; and the group general or blanket insurance . . . shall be continued and the retired employee shall pay the full premium cost, subject to the provisions of [§ 9A] or [9E] whichever may be applicable of the average group premium as determined by the appropriate public authority . . . ."

[9] The town offers coverage for its employees through a select number of insurance plans. All plans can be continued

Boss's premium payments are calculated based on her group family plan -- a plan she opted into prior to her retirement. The fact that this plan includes her husband is irrelevant to the amount the town must contribute toward Boss's premium. The town must cover fifty percent of the premium that Boss is to pay, not fifty percent of the cost to cover her individually. It also is clear in § 9A that the word "premium" refers to the total premium an insured individual pays toward his or her selected plan -- regardless of whether the plan is for individual or family coverage -- and therefore, the town is required to pay fifty percent of that total premium.

The town interprets the exclusion of the word "dependents" from § 9A as intentional silence and a deliberate omission by the Legislature. Based on our previous interpretations of similar sections under chapter 32B, we disagree. In Galenski, 471 Mass. at 310-311, we invalidated the town of Erving's retirement policy that it had adopted to limit § 9E[10] contributions solely to retirees who worked for the town for a

_____

upon retirement and will be subject to § 9A, so long as they are within the group offered by the town.

[10] Municipalities that choose to adopt § 9E agree to pay over fifty percent of a retiree's premium payments for his or her health insurance.

minimum of ten years.[11]  Before her retirement, the plaintiff had worked in the town of Erving for six years.[12]  Id. at 305. Because she did not meet the ten-year requirement, the retirement policy adopted by the town of Erving prevented her from receiving her seventy-nine percent premium coverage pursuant to § 9E.  Id. at 305-306, 307 n.4.  The court in Galenski held that the plain language of § 9E did not impose restrictions on which retirees could receive contributions, but rather the plain language of § 9E required municipal coverage of "employees retired from the service of the town."  Id. at 309, quoting G. L. c. 32B, § 9E.  Therefore, so long as Galenski met the c. 32B definition of a municipal employee, she was entitled to coverage pursuant to § 9E.[13]  Galenski, supra at 310.  The

---

[11] In 2001, the town of Erving adopted G. L. c. 32B, § 9E. The town's retirement policy was adopted in February 2006. Galenski v. Erving, 471 Mass. 305, 306-307 (2015).

[12] The plaintiff in Galenski had been a public school teacher for more than thirty years in Massachusetts.  She spent her last six years of service as a public school principal in the town of Erving.  She missed the ten-year teaching minimum, imposed by the town of Erving's retirement policy, by four years.  Galenski, 471 Mass. at 307.

[13] General Laws c. 32B defines an employee as

"any person in the service of a governmental unit or whose services are divided between [two] or more governmental units or between a governmental unit and the commonwealth, and who receives compensation for any such service, whether such person is employed, appointed or elected by popular vote, and any employee of a free public library maintained in a city or town to the support of which that city or town

court determined that a tenure-based requirement was not explicitly stated in the statute.  Id. at 310-311.  By concluding that the policy limiting § 9E payments to employees who had worked for the town of Erving for ten years was inconsistent with § 9E and with the Legislature's purpose in enacting G. L. c. 32B, the court struck down the town of Erving's attempt to limit the statute after choosing to adopt it.  Id. at 311.  See G. L. c. 32B, § 9E.

In the present case, the town's interpretation of the § 9A language of "premium costs payable by a retired employee" as distinguishing between individual and family coverage is at odds with the core of the holding in Galenski that a town may not limit its obligations in conflict with the language in c. 32B after adopting it.  In Galenski, the municipal policy was preempted by State law;[14] the court concluded that a town could

---

annually contributes not less than one-half of the cost; provided, however, that the duties of such person require not less than [twenty] hours, regularly, in the service of the governmental unit during the regular work week of permanent or temporary employment."

G. L. c. 32B, § 2.

[14] Under Massachusetts's Home Rule Amendment, municipal action is presumed valid unless preempted by State law.  Connors v. Boston, 430 Mass. 31, 35 (1999).  See art. 89, § 6, of the Amendments to the Massachusetts Constitution.  This court, on multiple occasions, has reiterated that a municipality may not enact a policy that is inconsistent with State law.  See Cioch v. Treasurer of Ludlow, 449 Mass. 690, 699 (2007) (citing to multiple cases in which local laws were invalidated as

not read coverage limitations into the statute where not explicitly stated. Galenski, 471 Mass. at 312. Similarly, here we cannot read a payment limitation into the statute when it is not explicitly mentioned in § 9A or in other sections of c. 32B.[15]

Further, the court has held that when two or more statutes relate to the same subject matter, they should be construed together "so as to constitute a harmonious whole consistent with the legislative purpose." Yeretsky v. Attleboro, 424 Mass. 315, 319 (1997), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975). The same principles of statutory interpretation apply here, where two or more sections within a statute relate to the same subject matter.

The plain text of § 1 identifies c. 32B's purpose as that of providing health insurance[16] for "certain persons in the

---

inconsistent with State law). The court in Galenski concluded that the policy at issue was in direct conflict with §§ 9 and 9E. Galenski, 471 Mass. at 312 n.9.

[15] Boss raised in her brief an argument that article 2 of the warrant places an additional impermissible limitation on § 9A. The town did not respond. Specifically, Boss argues that article 2 creates an impermissible ten-year minimum work requirement, similar to the one this court held was invalid in Galenski. Actions limiting the provisions within a statute are preempted by State law. Cioch, 449 Mass. at 698-699. The article 2 limitations are inconsistent with the language in G. L. c. 32B, § 9A, and precluded by our holding in Galenski, 471 Mass. at 310-311. See G. L. c. 32B, § 9E.

[16] Chapter 32B encompasses hospital, surgical, medical, and dental insurance, as well as other health insurance coverage.

service of . . . towns and districts and their dependents" (emphasis added).  G. L. c. 32B, § 1.  This language indicates an over-all intent to provide coverage for municipal employees and their dependents.  Section 9 merely extends these protections to retired employees and accounts for payment; it does not change the purpose of the chapter.  Section 9 states that "upon retirement of an employee . . . the group general or blanket insurance . . . shall be continued and the retired employee shall pay the full premium cost, subject to the provisions of [§ 9A] or [9E]" (emphasis added).  G. L. c. 32B, § 9.  The phrase "shall be continued" indicates that there is no change in an insured's plan coverage.  Therefore, a municipal employee's insurance plan continues after the insured retires; it is not altered or modified.

In addition, § 9 offers a town three payment options.  A town can choose to have retirees pay their full premium coverage, to pay one-half of a retiree's premium coverage, or to pay more than one-half of a retiree's premium coverage.  See G. L. c. 32B, §§ 9, 9A, 9E.  However, once a town has adopted its payment plan, it "will pay" -- as §§ 9A and 9E both state -- the insured's chosen plan's premium cost.  G. L. c. 32B, §§ 9A, 9E.  The town, by adopting § 9A, chose to cover fifty percent of retirees' premiums.

b.  Legislative history.  The legislative history of c. 32B also supports our conclusion that under § 9A the town is obligated to cover one-half of Boss's premium costs.  We interpret a statute

> "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."

Galenski, 471 Mass. at 309, quoting Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013).  To resolve whether there is an ambiguity regarding the use of the word "dependents" in §§ 9 and 9E, but not in § 9A, requires appropriate consideration of the relevant history and intent of the Legislature.  See Yeretsky, 424 Mass. at 319.

General Laws c. 32B derives from a session law passed in 1956.  St. 1956, c. 730, § 1.  From 1956 through 1965, § 9 of the statute stated that "the employee shall pay the entire average group premium . . . for the hospital, surgical and medical benefits for such employee or for such employee and his dependents."  Id.  In 1959, § 9A was added to give towns the option of covering fifty percent of retired municipal employees' premium payments.  St. 1959, c. 595.  The first paragraph of § 9 was amended in 1966, and the phrase "for such employee and his dependents" was removed from the opening sentence of the

statute.[17]  St. 1965, c. 841, § 5.  However, when § 9A had been added to c. 32B in 1959, the language in § 9 still included "dependent," and §§ 9 and 9A remained in effect for six years before the 1965 amendments.  See St. 1956, c. 730, § 1; St. 1965, c. 841, § 5.  There is little doubt that, in those six years, any town that adopted § 9A would cover one-half of a retiree's premiums, including those of his or her dependents.

Legislative history also shows that on May 18, 1959, the Senate committee on bills in the third reading introduced 1959 Senate Doc. No. 635, which detailed a new draft of § 9A.[18]  The Senate considered for a title, "An Act providing that certain governmental units having contributory group general or blanket insurance for persons in the service thereof and their dependents contribute one half the premium for said insurance for persons retired from service."  Although the title of an act does not control the language in the act, it provides some guidance regarding the intent of the Legislature at the time.

---

[17] The lower court judge found that this likely occurred because the language "for such employee and his dependents" was redundant.  Further, the 1965 amendment removed both the words "employee" and "dependent."  This does not signify a purposeful omission.  Clearly, the Legislature did not intend to stop coverage for employees, it being the very purpose of the statute.

[18] The substance of the draft is similar to the version that is in effect today.  Compare 1959 Senate Doc. No. 635 to G. L. c. 32B, § 9A, as amended through St. 2003, c. 46, § 13.

Hemman v. Harvard Community Health Plan, Inc., 18 Mass. App. Ct. 70, 73 (1984), superseded on another ground by St. 1989, c. 653, § 37. See United States v. Palmer, 3 Wheat. 610, 631 (1818). In drafting the sections of c. 32B, the Legislature intended to provide access to insurance for dependents, and as reflected in § 9A, this access included partial payments of premiums.

c. Conclusion. After considering the plain language of the statute and the legislative history, we conclude that the total premium costs would include those of a retiree and his or her dependents if they were previously covered under the plan while the retiree was employed. Section 9A requires the town to contribute fifty percent of the total premium for whatever continued coverage the retiree has adopted. If the retiree has continued with a family group plan, town contributions would cover the premium for the retiree and his or her dependents.

3. The validity of the town meeting vote on April 24, 2004. We next address the accompanying issue whether the town successfully adopted G. L. c. 32B, § 9A, when it took a vote on articles 2 and 4 presented at the town meeting on April 24, 2004. The town argues that the warrant for the April 24 town meeting was defective and misleading and that therefore the town never validly adopted § 9A. Boss contends that not only did the town validly adopt § 9A, but the town also is barred from raising this issue on appeal because it was not raised in the

court below.  We hold that the town did not sufficiently raise the issue below and is therefore barred from raising it on appeal.  We further hold that even if the issue were not waived, the town successfully adopted G. L. c. 32B, § 9A, at the town meeting.

a.  The town is barred from raising the issue.  This court, on numerous occasions, has held that issues not raised below cannot be argued for the first time on appeal.  See e.g., Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006); M.H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm'n, 386 Mass. 64, 67 (1982); Henchey v. Cox, 348 Mass. 742, 747 (1965). "The reason for this fundamental rule of appellate practice is well established:  it is important that an appellate court have before it an adequate record and findings concerning a claim to permit it to resolve that claim properly."  R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 74 (2001).

The inquiry into whether an issue has been raised is fact specific.  See M.H. Gordon & Son, Inc., 386 Mass. at 67 (looking at record to determine whether issue had been raised for first time on appeal).  See also R.W. Granger & Sons, 435 Mass. at 74 (finding issue was raised for first time on appeal where party did not introduce any evidence on issue or raise it during any argument at bench trial or in any of its posttrial motions). While the town does not dispute that a vote was taken on April

24, 2004, it argues that the vote was invalid due to the fundamentally misleading nature of the warrant articles.  Boss argues that the issue was not raised below and is therefore waived.  The town offers two examples as evidence that the argument was raised sufficiently:  its cross motion for summary judgment and the ruling by the motion judge.  The only mention that the cross motion for summary judgment and the lower court judge made regarding this issue was in relation to the town's statutory interpretation argument.[19]  Further, the motion judge never mentioned the warrant requirement statute, and his statement, standing alone, would not be enough.  See M.H. Gordon & Son, Inc., supra (considering judge's statement as factor in deeming issue raised below, but noting that this statement absent other evidence would not be enough).

The town's limited references to the warrant issue were never addressed in the context of the warrant actually being void, but rather in furtherance of the town's statutory interpretation of § 9A.  We therefore determine that the town's argument is insufficient and hold that the issue was not properly raised in the lower court.

---

[19] References to article 4 potentially containing misleading language were only offered as part of the town's statutory interpretation argument.  They were offered to explain how voters could only interpret § 9A in one way -- as not including payment coverage for dependents.

b.  The town validly adopted G. L. c. 32B, § 9A, during the town meeting on April 24, 2004.  Because G. L. c. 32B is a local option statute, and a similar situation may arise at a future town meeting, we next address whether, even if the issue of the town's adoption of G. L. c. 32B, § 9A, were not waived, the town successfully adopted it at the April 24, 2004, town meeting. Under G. L. c. 39, § 10, "[t]he warrant for all town meetings shall state the time and place of holding the meeting and the subjects to be acted upon thereat."  This court previously has stated that "[t]his means only that the subjects to be acted upon must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal."  Burlington v. Dunn, 318 Mass. 216, 219, cert. denied, 326 U.S. 739 (1945).  Only in limited circumstances can a town invalidate a vote.  A town may find a vote invalid if the language in the warrant is misleading, if the language included or excluded in the warrant substantially alters the article's meaning, or if the warrant fails to sufficiently state the nature of the matter.  See id. at 218-219; Coffin v. Lawrence, 143 Mass. 110, 112 (1886); Coonamessett Inn v. Chief of Falmouth Fire Dep't, 16 Mass. App. Ct. 632, 634-635 (1983).  However, once a section is validly adopted through a town meeting vote, c. 32B does not permit the section to be rescinded or revoked.  G. L. c. 32B, § 10.

The town rests its argument on the allegedly misleading language of article 2.  It contends that because the adoption of article 2 was contingent upon the passage of the article 4 ballot question, the voters were misled into thinking that the meaning of both articles was connected.  Article 2 states in relevant part, "[t]he town will pay [fifty percent] of the cost of an individual health plan offered" (emphasis added).  The town argues that this language misled voters into thinking that the article 4 ballot question adopting § 9A only included coverage for individual health plans.  Such a discrepancy, they argue, is sufficient to invalidate the warrant.  Nevertheless, the town provides no evidence that the voters were confused by the language in the warrant when they voted on April 24, 2004.  Cf. Wolf v. Mansfield, 67 Mass. App. Ct. 56, 58-59 (2006) ("The plaintiffs cite no authority for the proposition that confusion over a town meeting vote empowers a judge to order that a new vote be conducted . . . [and] the record fails to support the plaintiffs' claim that voters were confused.  On the face of the town meeting transcript, the residents understood [what] they were being asked to vote on").  In fact, the minutes from the town meeting demonstrate that the voters decisively adopted article 4, which had the exact language required under G. L. c. 32B, § 9A -- language we have held already, supra, includes coverage of family plans.  The warrant included all of the

required elements:  it specified the time, date, and location of the town meeting, and it provided a copy of the language of all relevant articles.  G. L. c. 39, § 10.  See Coffin, 143 Mass. at 112 ("Warrants are held sufficient if they indicate with substantial certainty the nature of the business to be acted on").  Absent evidence to the contrary, there is no reason for us to conclude that the town voters did not clearly understand the language in the warrant when they adopted it.  See Burlington, 318 Mass. at 219 ("[G. L. c. 39, § 10,] does not require that the warrant contain an accurate forecast of the precise action which the meeting will take upon [announced] subjects").  Therefore, we hold that the town successfully adopted G. L. c. 32B, § 9A, at the town meeting on April 24, 2004.

Conclusion.  By adopting G. L. c. 32B, § 9A, the town was required to cover fifty percent of the premiums for both retirees and the retirees' dependents.  Furthermore, the town successfully adopted G. L. c. 32B, § 9A, at the town meeting held on April 24, 2004.  We affirm the order granting summary judgment for Boss and denying the town's cross motion for summary judgment.

So ordered.