NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-57
24-P-58

BEAU GRASSIA & others[1]

<u>vs</u>.

DEAN BANK (and a companion case[2]).

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

These two appeals involve the same cases (consolidated below) and issues. The appellant in No. 24-P-58 is Janis Spencer, trustee of the Main Street Millis Realty Trust, who is the owner of the property at 39 Main Street, Millis, Massachusetts, which is the location of the King Street Café on the Charles restaurant. The appellants in the other appeal, No. 24-P-57, are the restaurant and its president. The facts of the

---

[1] Caridi Brothers King Street Co., Inc., and King Street Café on the Charles, Inc.

[2] Janis Spencer, as Trustee of Main Street Millis Realty Trust, <u>vs</u>. Dean Bank.

cases are well known to the parties and will not be repeated here, except as necessary.

Facts. Spencer, as trustee, is a party to a commercial mortgage (the mortgage) on the land with buildings thereon known and numbered as 39 Main Street, Millis, Massachusetts, which is given to the appellee in both cases, Dean Bank, the mortgagee, as collateral to secure her obligations under the mortgage. She is also party to a $200,000 mortgage note (the Note) in favor of the mortgagee bank. Grassia is a guarantor of the trust's debt.

On the date of the mortgage closing, the bank did not disburse the entire $200,000 to the borrower. Rather, it used a portion of the loan to pay off a prior mortgage it held on the property -- the propriety of which payment is not at issue here -- and it disbursed to the plaintiffs $65,000 additional dollars. This left an additional $73,273.98 borrowed under the terms of the Note that was not disbursed to the borrower.

The bank insisted, and argues here, that it was not required to disburse these funds to the borrower because this was a "construction loan" within the meaning of a commitment letter signed by the borrower. The bank argues this construction loan requires that the borrower request a disbursement and allow the bank to inspect completed projects before the bank is required to disburse funds to cover the costs of construction.

The Note called for payments of interest and principal on the entire $200,000 balance, despite the fact that this additional amount was not disbursed, and over the next roughly year and a half, the bank asserted that the procedures it claims were required prior to disbursement had not been followed, except with respect to $7,000 that the bank disbursed for insulation. The borrower insisted it could not comply with the request made by the bank because Grassia had already depleted his own funds paying for work performed before the loan closed and the plaintiffs needed the money to move forward with the project.

Eventually, the plaintiffs brought these suits, which were consolidated, based on the failure to disburse these monies, alleging breach of contract, fraudulent inducement, and a violation of G. L. c. 93A. The bank brought a motion for summary judgment in each suit, arguing that it was entitled to judgment on all these counts and on its declaratory relief counterclaim and for attorney's fees.

The judge allowed the motions, and entered summary judgments on the entire case, including the G. L. c. 93A claim, presumably because, in the absence of either a breach of contract or fraudulent inducement to enter the contract, there was no basis for a G. L. c. 93A claim. The plaintiffs also brought a cross motion for summary judgment on their claims and

3

the bank's counterclaim, which was denied.  After issuing his summary judgment decision, the judge ordered the plaintiffs to pay the bank's attorney's fees.  The plaintiffs have now appealed.

Discussion.  We review allowance of a motion for summary judgment de novo.  Galenski v. Erving, 471 Mass. 305, 307 (2015).  Where, as here, we review a decision on cross motions for summary judgment, we must determine whether, viewing the facts in the summary judgment record and all reasonable inferences that can be drawn therefrom "in the light most favorable to the party against whom the judge allowed summary judgment," Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 516 (2011), there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Matter of the Estate of Jablonski, 492 Mass. 687, 690 (2023).

The bank insists that this is a construction loan, but the various documents in the record do not bear this out.  The Note itself says nothing about this being a construction loan, and for aught that appears, it is an ordinary mortgage on the real property identified in the mortgage, securing a $200,000 loan.

The bank, however, points to a commitment letter, dated May 22, 2018.  This letter outlines certain terms of the proposed loan, including the bank's security interest in the property,

4

the interest rate, and repayment schedule.  Paragraph 29 of this letter, the bank argues, controls disbursement of the $200,000 owed under the Note by borrower and on which the borrower was required immediately to begin paying interest.  The commitment letter states that, "It is expressly understood and agreed that the terms, conditions, requirements and obligations of this commitment shall survive the closing date hereto and remain in full force and effect after the closing of the Loan."

To begin with, the commitment letter is not made part of the Note itself.  Rather, in the Note, in paragraph 8 -- "Events of Default," which includes a laundry list of events identified as "an event of default" under the Note -- subparagraph (e) reads:

> "failure by Borrower to comply with any other term of, or the occurrence of a default under, this Note, or the failure by the Borrower or any Guarantor to comply with the terms of, or the occurrence of a default under, any mortgage, guaranty, loan or security agreement or other agreement or document which may now or hereafter evidence, govern or secure this Note or any guaranty or endorsement of this Note; failure by the Borrower or any Guarantor to comply with the terms of or conditions of the Commitment Letter dated May 22, 2018."

The bank has not claimed any default by the plaintiffs for failure to comply with any term of the commitment letter, and, indeed, have never asserted that there has been an event of default.  Because the Note does not say that the commitment letter contains, or that the Note incorporates, any terms

5

relevant to the requirements for disbursement by the bank, the letter is irrelevant to this matter. The Note controls and not the commitment letter or its implications. As the Note does not say anything about conditions that must be met prior to disbursement, this suffices to resolve the case.

Even if we were to assume, however, that the commitment letter did create binding terms of the loan with respect to disbursement, it would be of no benefit to the bank. Some of the provisions of the commitment letter, which contains a great deal of boilerplate, are operative only if applicable to the circumstances of the loan. Thus, for example, paragraph 26, about soil tests, says, "If applicable, the receipt by the Bank of a satisfactory soil test" is a condition of the loan. Paragraph 28 says, "If applicable, the Bank's obligation to make this loan to you is conditional upon its receipt of a conformed copy of the Subsurface Sewerage Disposal System Inspection Form."

The next paragraph, paragraph 29, reads in full:

"A construction loan agreement will set forth the usual terms and conditions and will stipulate that the unadvanced proceeds will, at all times, be in an amount which, in the Bank's opinion, will be sufficient to complete construction in accordance with the plans and specifications submitted to the Bank.

"Construction advances will be made upon the receipt of a standard requisition submitted by the Borrower. Each construction advance will be subject to inspection and approval by a Bank approved Construction Consultant. The

6

cost of the inspections shall be borne by the Borrower. Prior to each advance, the Bank, at its discretion, may require evidence from its Counsel as to the continued priority of its first mortgage lien.  Cost is to be paid prior to final disbursement.  Proceeds of the loan will be credited to your Dean Co-operative Bank checking account on the basis of the schedule which is part of the construction loan agreement.

"After completion of the foundation, the Borrower shall provide to the bank a survey by a registered engineer certifying that the building complies with the provisions of existing setback requirements and any other applicable zoning regulations.  In addition, the well (if needed) and septic system must both be installed and have reviewed [sic] necessary approvals from the applicable boards."

The bank relies on this language in arguing that the funds may not be disbursed without a requisition, inspection, and approval by the bank.  This is why the bank claims it did not need to disburse additional funds to the plaintiffs.

But this provision only applies if the loan is a "construction loan agreement."  There is no such agreement in this case.  The first paragraph quoted above indicates how to identify the construction loan agreements to which paragraph 29 applies:  such agreements "will set forth the usual terms and conditions and will stipulate that the unadvanced proceeds will, at all times, be in an amount which, in the Bank's opinion, will be sufficient to complete construction in accordance with the plans and specifications submitted to the Bank."  Counsel, at argument, could not point to a construction loan agreement in the record and did not represent that one existed.  There is

7

certainly no loan agreement "set[ting] forth the usual terms and conditions" or stipulating that unadvanced proceeds shall be in any amount at all. There is no schedule, which paragraph 29 identifies as one part of a construction loan agreement, that might have provided information, if this were a construction loan, about what the projected costs were for each piece of work, so that one might determine what amount should be withheld in the first place.

There is, in fact, no document indicating why the amount chosen by the bank to withhold from disbursement was chosen. There are no plans or specifications submitted to the bank from which one might deduce this. The record does indicate that some cost estimates were, at some point prior to the commitment letter, sent to the bank by Grassia. But these are certainly not plans or specifications. They are littered with question marks next to amounts. They do not indicate anything about either $65,000 or $73,000 being amounts of any relevance, and, in any event, the commitment letter itself says no documents prior to its signing have further relevance.

The plaintiffs also argue that on one signed copy of the commitment letter, the letters "NA," presumably standing for "not applicable," are written in next to paragraph 29, and that the initials for the counsel for the bank are beneath them. Perhaps there is a dispute about whether those are counsel's

initials or what the meaning of this is.  But it makes no difference because it cannot raise an issue of material fact: paragraph 29, by its terms, is not applicable to this loan.

The bank argues that even if paragraph 29 is not applicable, it was still entitled to withhold the funds it did not disburse and require the steps of requisition, inspection, and approval before disbursing additional funds under the next paragraph of the commitment letter, paragraph 30.  That provision is entitled "Other Conditions."  These are:

> "1.  Primary Deposit Account for Main Street Millis Realty Trust, Caridi Brothers King Street Co., Inc., King Street Café on the Charles, Inc. and Beau Grassia be maintained with Dean Bank.

> "2.  Funds for construction and improvements to be held in a passbook account until work completed and be inspected for advances.

> "3.  Updated Personal Financial Statement."

The bank would rely on condition 2.  This condition, however, can only be read in conjunction with paragraph 29. Standing alone, it is plainly inadequate to set up the system the bank alleges was in place and that was actually articulated in paragraph 29.  It contains none of the terms and conditions one might need for a construction loan.  It provides for no schedule that might indicate what funds are to be withheld and how, and for what amounts might be advanced.

In short, on its face paragraph 30 cannot, standing alone and in the absence of an actual construction loan agreement, have been intended to authorize the retention of funds by the bank and their disbursement for construction. It provides no mechanism for determining what the amount to be withheld at closing is supposed to be.

Because the bank did not enter into a construction loan agreement with the borrower, and because there was no agreement between them concerning the withholding of some of the $200,000 loan or stating that certain of the loan proceeds would not be disbursed absent requisition, inspection, and approval of construction, the bank's motion for summary judgment on the breach of contract claim should not have been allowed. Rather, the plaintiffs' cross motion should have been allowed.

Because the plaintiffs were correct about the meaning of the contract, their claim that they were fraudulently induced into some other type of agreement must fail, and therefore the judgment on the fraudulent inducement claim was properly entered for the bank.

Because neither party made any separate arguments on the G. L. c. 93A claim below, relying on their positions on the other claims, and because the judge did not separately address this claim, and in light of the judgment that must be ordered against the bank on the breach of contract claim, the case must

be remanded for a calculation of damages due to the breach, and for further proceedings on the plaintiffs' claim under G. L. c. 93A, about which we express no opinion.

So much of the summary judgments as entered in favor of the bank on the plaintiffs' breach of contract claims are reversed, as is the order awarding attorney's fees to the bank, and judgment shall enter for the plaintiffs on those claims. So much of the summary judgments as dismissed the plaintiffs' G. L. c. 93A claims are vacated. In all other respects the summary judgments are affirmed. The case is remanded for calculation of damages on the plaintiffs' breach of contract claims, any award of attorney's fees that may be appropriate, should they be sought, and such further proceedings with respect to the claims under G. L. c. 93A as are consistent with this memorandum and order. The bank's request for an award of its appellate attorney's fees is denied.

<u>So ordered</u>.

By the Court (Rubin, D'Angelo & Smyth, JJ.[3]),

Clerk

Entered: June 20, 2025.

---

[3] The panelists are listed in order of seniority.